318 F.3d 937
Jarek MOLSKI, Plaintiff-Appellee, andWalter DeGroote; Equal Access Association, Suing on Behalf of Walter Lee DeGroote and its Members, Plaintiffs-Appellants,v.Martin L. GLEICH, Trustee of the Gleich Family Revocable Trust (12/22/93), Defendant, andBP America, Inc; Amanallah H. Al; Khalid H. Ali; GHM Enterprises; Atlantic Richfield Company, Atlantic Richfield Corporation, a Delaware Corporation; Ramona A.M. P.M., Defendants-Appellees.Jarek Molski; Walter Degroote; Equal Access Association, Suing on Behalf of Walter Lee DeGroote and its Members, Plaintiffs, andRoberto Frias, Plaintiff-Appellant,v.Martin L. Gleich, Trustee of the Gleich Family Revocable Trust (12/22/93), Defendant, andBP America, Inc; Amanallah H. Al; Khalid H. Ali; GHM Enterprises; Atlantic Richfield Company, Atlantic Richfield Corporation, a Delaware Corporation; Ramona A.M. P.M., Defendants-Appellees.Jarek Molski, Plaintiff-Appellee,Amy B. Vandeveld, Objector-Appellant, andWalter DeGroote; Equal Access Association, Suing on Behalf of Walter Lee DeGroote and its Members; Roberto Frias, Plaintiffs-Appellants,v.Martin L. Gleich, Trustee of the Gleich Family Revocable Trust (12/22/93), Defendant, andBP America, Inc; Amanallah H. Al; Khalid H. Ali; GHM Enterprises; Atlantic Richfield Company, Atlantic Richfield Corporation, a Delaware Corporation; Ramona A.M. P.M., Defendants-Appellees.
No. 00-57099.
No. 01-55066.
No. 01-55068.
United States Court of Appeals, Ninth Circuit.
Argued and Submitted February 12, 2002.
Filed February 6, 2003.

COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED David C. Wakefield (argued), Theodore A. Pinnock, Michelle Martin-Wakefield, Pinnock & Associates, San Diego, CA, for the plaintiffs-appellants and objector-appellant; Amy B. Vandeveld (argued), San Diego, CA, for the objector-appellant.
Timothy B. Taylor (argued), Martha H. Sottosanti, Sheppard, Mullin, Richter & Hampton, San Diego, CA, for the defendant-appellee; Russell C. Handy (argued), Center for Disability Access, San Diego, California for the plaintiff-appellee.
Appeal from the United States District Court for the Southern District of California; Irma E. Gonzalez, District Judge, Presiding. D.C. No. CV-98-00951-IEG.
Before: FERGUSON, TASHIMA and GRABER, Circuit Judges.

1
Opinin by Judge FERGUSON. Concurrence by Judge GRABER.

ORDER

2
The opinion in this case, Molski v. Gleich, 307 F.3d 1155 (9th Cir.2002), is withdrawn. An opinion will be filed replacing it.

OPINION
FERGUSON, Circuit Judge

3
Named Plaintiff/Appellee Jarek Molski brought this action against Defendant/Appellee Atlantic Richfield Company on behalf of a class of mobility-impaired individuals, alleging denial of access to public accommodations and discrimination under the Americans with Disabilities Act and California disability laws. The District Court certified a mandatory class under Fed.R.Civ.P. 23(a) and 23(b)(2) and approved a proposed consent decree pursuant to Fed.R.Civ.P. 23(e). Under the consent decree, ARCO agreed to undertake certain accessibility enhancements at its locations, pay monetary damages to Molski and the class counsel's fees, and make donations to eight disability rights organizations. In exchange, the class members agreed to release all claims for statutory damages and certain actual damages.

4
Objectors/Appellants appeal the certification of class and approval of the consent decree, asserting that the District Court (1) erred by finding that actual damages were not released by the consent decree; (2) erred by certifying a mandatory class under Fed.R.Civ.P. 23(b)(2); (3) failed to provide adequate notice to the class members; (4) erred by determining that the consent decree was fair, adequate, and reasonable; and (5) erred by finding that the class representative and class counsel adequately represented the class.

5
This Court has jurisdiction pursuant to 28 U.S.C. § 1291. In light of the broad release provision, which released the claims of the class members and left them with little or no relief, we determine that the certification of a mandatory class was violative of the class member's due process rights and that the consent decree was inadequate and fundamentally unfair. Therefore, we reverse and remand.

I.
A. Parties to the Appeal

6
Defendant/Appellee ARCO owns, leases, and/or operates approximately 1,200 gas stations and mini-markets in the State of California.1 Each is a "public accommodation" within the meaning of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. See 42 U.S.C. §§ 2000a(b)(2), 12181(7)(f). Molski is the sole named plaintiff for the class. ARCO and Molski are collectively referred to as "Appellees."

7
Plaintiffs/Appellants Walter Lee DeGroote and Equal Access Association ("EAA") are collectively referred to as "DeGroote." DeGroote filed a complaint against ARCO, styled DeGroote v. Ramona A.M. P.M., No. 00-CV-1689 in the District Court, which was later consolidated with the Molski action. The DeGroote complaint was substantially similar to the Molski amended complaint with respect to the claims, relief sought, and identity of the class. Upon ARCO's motion and the non-opposition of DeGroote, the District Court consolidated the two actions. Appellants Roberto Frias ("Frias") and Amy Vandeveld ("Vandeveld") filed objections to class certification and the proposed consent decree. DeGroote, Frias, and Vandeveld are collectively referred to as "Appellants."

B. Procedural History

8
On May 20, 1998, Mark D. Potter ("Potter" or "class counsel") filed a complaint against ARCO on behalf of Molski, alleging that Molski was denied access to ARCO filling and service stations in violation of the ADA and various state laws, including the Unruh Civil Rights Act (California Civil Code sections 51, 52, and 54). Shortly after filing the complaint, Potter contacted ARCO's local counsel through both a demand letter and a phone call, informing ARCO that he planned to amend the complaint to include class allegations.

9
Between June 1, 1998 and October 2, 1998, Potter engaged in multiple settlement negotiations with various ARCO attorneys. These negotiations resulted in the parties' agreement as to the primary components of the consent decree, including payment of $195,000 to disability rights organizations, $50,000 in attorney's fees to Potter, and $5,000 in damages to Molski. Following this initial agreement, ARCO and Molski continued negotiating the details of the terms of the consent decree.

10
On July 26, 1999, Molski filed an amended complaint, presenting class allegations. On July 26, 2000, ARCO and Molski filed a joint motion for an order granting preliminary approval of the proposed consent decree, directing notice to the class, and conditionally certifying the settlement class. The District Court granted the joint motion on September 6, 2000.

11
In its order, the District Court directed that notice be issued to the putative class members in three manners:2 (1) posting of the two-page notice near an exterior or interior cash window or an interior entrance window of each gas station or mini-market owned, leased, or operated by ARCO-branded facility in California; (2) publication of the notice in the Los Angeles Times, the San Diego Union-Tribune, the Sacramento Bee, and the San Francisco Chronicle/Examiner; and (3) mailing of the notice to over 80 disability rights organizations in California.

12
In addition, the District Court set a deadline for the filing and service of written objections and/or notices of intent to appear at the fairness hearing. On or around October 31, 2000, thirty-three objectors, including DeGroote, EAA, Frias, and Vandeveld filed their objections to the proposed consent decree and requested the right to opt-out of the class. Most of the objections focused on the consent decree's release of state statutory damages. Some of them focused on concerns regarding the adequacy of the injunctive relief provided in the decree.

13
On December 4, 2000, the District Court held a fairness hearing regarding the certification of the class and the proposed consent decree. The Court then entered an order certifying a mandatory class under Rule 23(b)(2) and approving the proposed consent decree. The Court also entered the consent decree as its final judgment. Each of the Appellants timely filed his or her notice of appeal, challenging the District Court's order certifying the class and approving the decree.

C. Terms of the Consent Decree

14
The consent decree defines the settlement class as follows:

15
[A]ll persons with Mobility Disabilities who: (1) have visited any ARCO-Branded Facility in the State of California as customers; (2) who have been deterred from availing themselves of the goods and services otherwise available to customers at these ARCO-Branded Facilities; (3) who could have asserted claims against ARCO and/or its Lessee Dealers under ADA or could have asserted California Disability Law Claims; or (4) who have been and/or are being denied the right to full and equal access to, and use and enjoyment of ARCO's service stations in California due to disability violations.

16
The consent decree provides for injunctive relief. In particular, ARCO is required to complete certain accessibility enhancements (i.e., structural modifications to improve accessibility for mobility-impaired individuals) within six years of the District Court's final approval of the decree.3 These accessibility enhancements include removing barriers to restrooms, stores, and self-service card stations by constructing ramps and sidewalks, installing grab bars, widening entrance doors, and clearing space. However, ARCO is not required to complete an enhancement if it is "Structurally Impracticable, Technically Infeasible or Virtually Impossible; or if completion of such Enhancement would involve a Significant Risk or Loss of Selling or Serving Space," or if it would violate a federal, state, or local law. In addition, all new ARCO facilities must be constructed in compliance with ADA regulations. In order to ensure compliance, class counsel has the right to inspect a random and representative sample of the ARCO facilities. In addition, ARCO must promulgate and implement written policies consistent with the provisions of Title III of the ADA at all ARCO facilities.

17
In addition to the injunctive relief, the consent decree provides that ARCO will pay named plaintiff Molski $5,000 to settle his individual claims. It also provides that ARCO will pay class counsel Potter $50,000 for the services performed in connection with the case. In addition, ARCO is required to make donations, totaling $195,000, to eight different disability organizations in California.4 The decree does not provide for specific, individualized relief for each class member.

18
In the decree, ARCO explicitly denies any and all liability to Molski or the class members. The terms of the decree also include a broad release provision, whereby Molski and the class members release any past, present, or future claims "based upon Title III of the Americans with Disabilities Act and/or the California Disability Law Claims" against the facilities covered by the consent decree. "The Released Claims do not include personal injury claims involving physical injury to plaintiff."

19
Finally, the consent decree includes a merger clause, which provides that the decree "supersedes any and all other prior agreements or drafts either written or oral, between the Parties and Class Counsel and counsel for ARCO with respect to the subject matter thereof."

II.

20
Appellants present numerous issues on appeal. The following issues must be determined: (1) whether the consent decree releases actual, as well as statutory, damages; (2) whether the class was properly certified as a mandatory class under Rule 23(b)(2); (3) whether the notice to the class was adequate; (4) whether the consent decree was fair, adequate, and reasonable to all those concerned; and (5) whether the class representative and counsel adequately represented the absent class members.5

A. Interpretation of the Consent Decree

21
As an initial matter, it must be determined which state law damages are released under the consent decree. This issue lies at the heart of many of Appellants' arguments. They contend that actual damages, excepting those for physical injury, were released through the consent decree. Appellees claim that the consent decree did not release any actual damages. Both sides agree that the consent decree released statutory damages.

22
The California Unruh Civil Rights Act prohibits discrimination against persons with disabilities. Cal. Civ.Code §§ 51, 54. The Act provides that individuals may seek recovery of both actual and/or statutory damages for violations of its provisions. Cal. Civ.Code §§ 52(h), 54.3; see Botosan v. Paul McNally Realty, 216 F.3d 827, 835 (9th Cir.2000). Actual damages include both general damages (including non-quantifiable damages for emotional distress) and special damages (including pecuniarily measurable damages for out-of-pocket losses). Cal. Civ.Code § 52(h); Walnut Creek Manor v. Fair Employment Hous. Comm'n., 54 Cal.3d 245, 284 Cal.Rptr. 718, 814 P.2d 704, 708-09 (1991); see Boemio v. Love's Rest., 954 F.Supp. 204, 208 (S.D.Cal.1997).

23
Sections 52(a) and 54.3 are the primary damage provisions at issue in this case. Section 54.3(a) provides:

24
Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities... or otherwise interferes with the rights of an individual with a disability... is liable for each and every offense for the actual damages, and any amount that may be determined by the jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages, but in no case less than one thousand dollars ($1,000)....

25
Cal. Civ.Code § 54.3(a) (emphasis added). Section 52(a) provides similar relief from "[w]hoever denies, aids or incites a denial" of civil rights or discriminates in violation of sections 51,6 51.5,7 or 51.6; however, the statutory minimum is set at $4,000, rather than $1,000, for each incident.8 Thus, both sections 52(a) and 54.3 provide for actual, treble, and minimum statutory damages.

26
The consent decree includes the following release provision:

27
The Released Claims are any and all past and/or present claims, rights, demands, charges, complaints, actions, causes of action, obligations or liabilities of any and every kind, known or unknown (hereafter Claims), for injunctive relief, declaratory relief, attorney fees, or damages based upon Title III of the Americans with Disabilities Act and/or California Disability Law Claims relating to access for persons with Mobility Disabilities at the ARCO-Branded Facilities covered by this Decree. Released Claims also include Claims arising under Title III of the Americans with Disabilities Act and/or California Disability Law Claims regarding Accessibility Enhancements and the elements of ARCO-Branded Facilities affected thereby that arise during the term of this Decree. Nothing in this Section, however, shall prevent Class Counsel from enforcing this Consent Decree. The Released Claims do not include personal injury claims involving physical injury to a plaintiff. (emphasis added).

28
Thus, the plain language of the decree releases all statutory damages, treble damages, and actual damages, not involving physical injury. The actual damages that are released include damages for emotional distress and property damages.

29
Despite the plain language of the decree, Appellees point to the District Court's Order as support for their assertion that actual damages are preserved by the consent decree. In its Order, the District Court stated: "The Consent Decree releases class members claims for statutory damages against ARCO but preserves the right of class members to bring claims for actual damages." However, a district court cannot unilaterally modify the provisions of a consent decree through its order approving the proposed decree. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir.1998) ("Neither the district court nor this court ha[s] the ability to delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety.") (citations and internal quotation marks omitted); see Evans v. Jeff D., 475 U.S. 717, 726, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986) (noting that a district court is only permitted to accept the proposal, reject it and postpone the trial date to see if a different settlement can be achieved, or reject it and try the case).

30
Additionally, Appellee ARCO asserts that it is bound by statements it made both on the record and publicly, indicating that future claims for actual damages would not be precluded by the consent decree. This argument also fails. The consent decree includes a merger clause, which prevents consideration of outside statements. Moreover, the consent decree was the final judgment of the District Court. See Hook v. Arizona Dep't of Corr., 972 F.2d 1012, 1017 (9th Cir.1992); Twentieth Century-Fox Film Corp. v. Dunnahoo, 637 F.2d 1338, 1340-41 (9th Cir.1981). Thus, the parties will be bound by the language of the decree in future litigation. This rule is particularly appropriate in class action litigation because a member of the class who was not present at any negotiations would be at a disadvantage in presenting extrinsic evidence of the meaning of the consent decree. Accordingly, we determine that the consent decree releases statutory damages, treble damages, and actual damages (excepting those involving physical injury).

B. Right to Opt-Out

31
Appellants contend that the District Court erred by certifying a mandatory class under Rule 23(b)(2), despite the fact that the consent decree released monetary damages. We review a district court's class certification for an abuse of discretion. Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir.2001), amended by 273 F.3d 1266 (9th Cir.2001). "When a district court, as here, certifies for class action settlement only, the moment of certification requires heightened attention." Ortiz v. Fibreboard Corp., 527 U.S. 815, 848-49, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (internal quotation marks and citation omitted). The district court's decision must be supported by sufficient findings to be afforded "the traditional deference given to such a determination." Local Joint Executive Bd. Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1161 (9th Cir.2001), cert. denied, 534 U.S. 973, 122 S.Ct. 395, 151 L.Ed.2d 299 (2001). We reverse if the district court's certification is premised on legal error. Hawkins v. Comparet-Cassani, 251 F.3d 1230, 1237 (9th Cir.2001) (citation omitted).

32
The District Court certified the class under Rule 23(b)(2) without notice or the right to opt-out. Under Rule 23(b)(2), an action may be certified as a class action if it fulfills the prerequisites of Rule 23(a),9 and the requirement that the "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making" broad injunctive and/or declaratory relief appropriate. Fed.R.Civ.P. 23(b)(2). In contrast to a class certified under Rule 23(b)(3),10 members of a Rule 23(b)(2) class do not have the right to opt-out. See Ticor Title Ins. Co. v. Brown, 511 U.S. 117, 121, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994) (per curiam) (hereinafter Ticor Title II). See generally 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1775 (2d ed.1986). However, a district court may require notice and the right to opt-out under its discretionary authority provided in Rule 23(d)(2).

33
In this case, neither the prerequisites of Rule 23(a) nor the requirement of injunctive relief is at issue. Rather, the parties dispute whether the class could be certified under Rule 23(b)(2) without the right to opt-out when monetary damages were sought and released. Although the rule is silent as to this issue, we have recognized that "[c]lass actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages." Probe v. State Teachers' Ret. Sys., 780 F.2d 776, 780 (9th Cir.1986); see Fed.R.Civ.P. 23(b)(2) advisory committee's note (1966) ("The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.") (emphasis added). In other words, in order to permit certification under this rule, the claim for monetary damages must be secondary to the primary claim for injunctive or declaratory relief. Probe, 780 F.2d at 780; see Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1240 & n. 3 (9th Cir.1998).

34
Individualized claims for damages in the class action setting present due process concerns, particularly in the context of no-notice, no-opt-out classes. See Robinson v. Metro-North Commuter Railroad Co., 267 F.3d 147, 166 (2d Cir.2001). Thus, we have held that certain minimal procedural safeguards, such as notice and the right to opt-out, must be provided to bind absent class members when substantial monetary damages are involved. Brown v. Ticor Title Ins. Co., 982 F.2d 386, 392 (9th Cir.1992) (citation omitted) (hereinafter Ticor Title I), cert. dismissed as improvidently granted by Ticor Title II, 511 U.S. 117, 121, 114 S.Ct. 1359, 128 L.Ed.2d 33; see Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-812 & n. 3, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).

35
1. The Supreme Court's Decision in Ortiz v. Fibreboard Corp.

36
Appellants contend that, in light of the Supreme Court's recent decision in Ortiz v. Fibreboard Corp., 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999), minimum due process requires the right to opt-out for absent class members if any monetary damages are involved. Specifically, Appellants contend that Ortiz recasts the applicable law and establishes the right to opt-out of any Rule 23(b)(2) class that includes monetary damages.11 Although we disagree that Ortiz requires adoption of this per se rule, we recognize the Court's growing concerns regarding the certification of mandatory classes when monetary damages are involved.12

37
In Ortiz, the Supreme Court reversed certification of a mandatory class under Rule 23(b)(1)(B) when the district court failed to ascertain and independently evaluate the limits of a global settlement fund, which liquidated actual and potential asbestos tort claims. 527 U.S. at 864, 119 S.Ct. 2295 (questioning whether a limited fund under Rule 23(b)(1)(B) may ever be used to liquidate actual and potential tort claims). The Court found that, because of its mandatory nature, a stringent interpretation of Rule 23(b)(1)(B) is necessary both to minimize conflict with the Rules Enabling Act, 28 U.S.C. § 2072(b), and to avoid the serious constitutional questions raised by a more lenient construction. Id. at 845-48, 864, 119 S.Ct. 2295.

38
In particular, the Court noted that "no reading[of Rule 23] can ignore the [Rules Enabling] Act's mandate that `rules of procedure shall not abridge, enlarge or modify any substantive right.'" Id. at 845, 119 S.Ct. 2295 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) and 28 U.S.C. § 2072(b)). The Court emphasized that a mandatory settlement-only class action "compromises [the class member's] Seventh Amendment [jury trial] rights without their consent." Id. at 846, 119 S.Ct. 2295. Further, the Court found that aggregation of monetary damage claims in such actions implicates the fundamental due process right not to be "`bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'" Id. (quoting Hansberry v. Lee, 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940)).

39
In sum, the Supreme Court in Ortiz expressed its growing concern regarding the constitutionality of certifying mandatory classes when monetary damages are at issue. Id. at 844, 864, 119 S.Ct. 2295; see Ticor Title II, 511 U.S. at 121, 114 S.Ct. 1359 (noting the possibility that actions seeking any monetary damages may only be certifiable under Rule 23(b)(3)). However, contrary to Appellants' assertion, the Supreme Court did not adopt a per se rule requiring due process protections for absent class members when any monetary damages are claimed. Ortiz, 527 U.S. at 844, 864, 119 S.Ct. 2295. In fact, the Court recognized the limitations of the procedural protections afforded absent class members. Id. at 848 n. 24, 119 S.Ct. 2295 (noting that the due process protections established under Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811 n. 3, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), were limited to "out-of-state class members whose claims were `wholly or predominately for money judgments'").

40
Moreover, we have implicitly refuted Appellants' argument for the adoption of a per se rule. In recent cases, we have indicated that certification of a mandatory class may be appropriate even when monetary damages are involved. Kanter v. Warner-Lambert Co., 265 F.3d 853, 860 (9th Cir.2001) ("In Rule 23(b)(2) cases, monetary damage requests are generally allowable only if they are merely incidental to the litigation."). But see Jefferson v. Ingersoll Int'l Inc., 195 F.3d 894, 897 (7th Cir.1999) (interpreting Ortiz and holding that "in actions for money damages class members are entitled to personal notice and an opportunity to opt out"). Accordingly, Appellants' argument for the adoption of a per se rule fails.13

2. Rule 23(b)(2) Certification

41
Appellants contend that the District Court's certification of the class under Rule 23(b)(2) was erroneous because monetary damages were the predominant form of relief sought by the class. Specifically, Appellants argue that the damages sought by the class were non-incidental damages and urge that this Court adopt the standard set forth in Allison v. Citgo Petroleum Corp., 151 F.3d 402, 413-15 (5th Cir.1998), requiring that all non-incidental damages are considered predominant for the purposes of Rule 23(b)(2).

42
As an initial matter, we agree that the consent decree released damages that were not incidental damages. Incidental damages are damages "that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." Id. at 415 (emphasis in original) (citing Fed.R.Civ.P. 23(b)(2)). Here, the released damages included both actual and treble damages. See Cal. Civ.Code §§ 52, 54.3 (providing for statutory damages up to three times the amount of actual damages). The actual damages were not incidental because they do not flow directly from liability to the class as a whole. Similarly, the treble damages that were released were not incidental.

43
Although we agree with Appellants' contention that the consent decree released non-incidental damages, we refuse to adopt the approach set forth in Allison. See Robinson v. Metro-North Commuter Railroad Co., 267 F.3d 147, 163-64 (2d Cir.2001), cert. denied, 535 U.S. 951, 122 S.Ct. 1349, 152 L.Ed.2d 251 (2002) (refusing to adopt the incidental damages approach set forth in Allison). As discussed by the Second Circuit in Robinson, adoption of a bright-line rule distinguishing between incidental and nonincidental damages for the purposes of determining predominance would nullify the discretion vested in the district courts through Rule 23. Id. at 164-65 (citing Allison, 151 F.3d at 430-31 (Dennis, J., dissenting)). In addition, such a bright-line rule holds troubling implications for the viability of future civil rights actions, particularly those under the Civil Rights Act of 1991. Id. at 163 n. 8 (citations therein).

44
Finally, we have not previously recognized a distinction between incidental and non-incidental damages in determining predominance for the purposes of Rule 23(b)(2) certification.14 Rather than adopting a particular bright-line rule, we have examined the specific facts and circumstances of each case. See Kanter, 265 F.3d at 860 (noting that the award of monetary damages was the "essential goal" in the litigation); Linney, 151 F.3d at 1240 (comparing the value of the injunctive and monetary relief). In order to determine predominance, we have focused on the language of Rule 23(b)(2) and the intent of the plaintiffs in bringing the suit.15 See Kanter, 265 F.3d at 860; Linney, 151 F.3d at 1240 n. 3 (holding that the class was properly certified under Rule 23(b)(2) because the defendant had acted in a manner generally applicable to the class).

45
In this case, injunctive relief was the predominant form of relief sought by the class. The named plaintiff alleged that ARCO acted in a manner generally applicable to the class by denying access to ARCO facilities. Particularly in light of the fact that claims of physical injury were preserved, the injunctive relief appeared to be the primary goal in the litigation and the settlement agreement. Thus, we hold that the District Court did not abuse its discretion in certifying a Rule 23(b)(2) class.

3. Treble Damages

46
Appellants also assert that the procedural safeguards were necessary because the monetary damages released by the consent decree were substantial, thus triggering minimum due process requirements. We agree.

47
The certification of a mandatory class that includes treble damages may be violative of the absent class members' due process rights. We have held that statutory treble damages can be substantial and, thus, render the action a hybrid suit, in which minimum due process requires the right to opt-out. Ticor Title I, 982 F.2d at 392 (holding that due process was violated in the prior class litigation because the class had sought treble damages and the absent members had not been given the right to opt-out). Because the statutory damages in sections 52 and 54.3 provide for treble damages, they must be considered substantial. See Cal. Civ.Code §§ 52, 54.3 (providing for statutory damages up to three times the actual damages in a case); see also Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 n. 3 (9th Cir.2000) (describing the statutory damages under California Civil Code section 52 as "treble damages"); Koire v. Metro Car Wash, 40 Cal.3d 24, 219 Cal. Rptr. 133, 707 P.2d 195, 200 (1985) (discussing the punitive nature of the damages under sections 52 and 54.3). Thus, the District Court erred by failing to afford notice and the right to opt-out as to the claims for treble damages.16

C. Adequate Notice

48
Appellants assert that the notice provided to the class was inadequate and failed to satisfy the requirements of due process.17 In particular, Appellants contend that the language of the notice was deficient because it did not thoroughly explain which damages would be barred. They also contend that publication was an inappropriate means of effecting actual notice. We review a district court's rulings regarding notice de novo. Silber v. Mabon, 18 F.3d 1449, 1453 (9th Cir.1994). Whether notice of a proposed settlement in a class action satisfies due process is a question of law reviewed de novo. Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1374 (9th Cir.1993).

49
As discussed earlier, the District Court required notice pursuant to its discretionary authority under Rule 23(d)(2). The District Court ordered three forms of notice: (1) posting of the notice at all ARCO stations, (2) mailing of the notice to disability rights organizations, and (3) publication of the notice in four major California newspapers. As to the release of claims, the two-page notice stated:

50
If the Consent Decree is given Final Approval, all Class members will be bound by the provisions of the Decree regarding the Americans with Disabilities Act, the Unruh Civil Rights Act, California's Disabled Person Act, and any other state laws relating to disabled access. Any and all claims for violations of these laws, including statutorily set minimum damage claims, will be barred. The Decree does not affect the rights of any Class member with respect to personal injury actions relating to duties held under the Americans with Disabilities Act or state disabled access laws.... (emphasis added).

51
Because the consent decree releases all claims for actual damages, except those involving physical injury, the language of the notice was inadequate. The notice stated that the "Decree does not affect the rights ... with respect to personal injury actions." The term "personal injury" includes claims of emotional distress. Black's Law Dictionary 630 (7th ed.1999) (defining "personal injury" as "[a]ny invasion of a personal right, including mental suffering and false imprisonment."). By failing to explain that only claims involving literally physical injuries were not released under the proposed consent decree, the notice misled the putative class members.

52
Moreover, the publication required by the District Court was insufficient to effect notice. Notice for a Rule 23(b)(2) class is discretionary under Rule 23(d)(2).18 In contrast, notice for a Rule 23(b)(3) class must fulfill the stringent requirements of Rule 23(c)(2), i.e., best notice practicable.19 Because the notice requirements differ, Appellants' contentions regarding the adequacy of the notice are fundamentally tied to our last discussion of whether the District Court abused its discretion by certifying the mandatory class. As concluded above, the District Court abused its discretion by certifying a non-opt-out class because substantial damages were released. Because the class members had the right to opt-out, they also had the right to the best notice practicable. See Silber, 18 F.3d at 1454. Yet, the District Court failed to do so. Notice could have been given through individual mailings to disabled drivers, using the names maintained by the Department of Motor Vehicles.20 See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173-77, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (holding that individual notice to class members identifiable through reasonable efforts is mandatory in (b)(3) actions). Because no individualized efforts were undertaken, we hold that the notice provided to the class was inadequate and failed to comport with the requirements of due process.

D. Approval of the Consent Decree

53
Appellants argue that the District Court abused its discretion in finding that the consent decree was fundamentally fair, adequate, and reasonable. See Fed. R. Civ. Pro. 23(e); see also Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir.1992). We review a district court's decision to approve a class action settlement for a clear abuse of discretion. Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.), 213 F.3d 454, 458 (9th Cir.2000) (noting that review of the district court's decision to approve a settlement is "extremely limited"). "[W]e will affirm if the district judge applies the proper legal standard and his [or her] findings of fact are not clearly erroneous." Id.

54
In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, a district court may consider some or all of the following factors:

55
the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

56
Linney, 151 F.3d at 1242 (quoting Torrisi, 8 F.3d at 1375). However, where the court is "[c]onfronted with a request for settlement-only class certification," the court must look to the factors "designed to protect absentees." Amchem, 521 U.S. at 620, 117 S.Ct. 2231. In addition, "[s]ettlements that take place prior to formal class certification require a higher standard of fairness." Dunleavy, 213 F.3d at 458 (citing Hanlon, 150 F.3d at 1026).

57
As discussed above, the District Court clearly erred in deciding that no actual damages were released and in determining that certification under Rule 23(b)(2) was appropriate despite the release of the treble damages.21 These issues alone raise serious concerns regarding the fairness of the consent decree and warrant reversal. However, the issue of whether the consent decree adequately protected the interests of the absentee class members is equally troubling.

58
Here, the class members lost their rights to pursue any claims (excepting those for physical injury); the class representative received monetary relief of $5,000; and the class counsel was paid $50,000. The corporation was required to make tax-deductible donations to third parties and simply meet its legal obligations (or perhaps even less than that required) under the ADA.22 See Crawford v. Equifax Payment Servs., Inc., 201 F.3d 877, 881 (7th Cir.2000) (rejecting the settlement as unfair because the named plaintiff and class counsel were paid "to go away" and "the other class members received nothing ... and lost the right to pursue class relief."). In sum, the class members received nothing; the named plaintiff and class counsel received compensation for his injury and their time; and the defendant escaped paying any punitive or almost any compensatory damages. Id. ("[A]ll the settlement does for... [the absent class members] is cut them off at the knees."). This outcome is particularly problematic because only a minimal amount of discovery occurred in this case, and the primary components of the agreement were reached prior to filing of the class action. See Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 626 (9th Cir.1982) (noting that the district court's assessment of the fairness of the settlement is "nearly assured when all discovery has been completed and the case is ready for trial") (citation omitted).

59
Intertwined with our finding that the settlement agreement was unfair is the fact that the cy pres award in this case replaced the claims for actual and treble damages of potentially thousands of individuals.23 Although it seems somewhat distasteful to allow a corporation to fulfill its legal and equitable obligations through tax-deductible donations to third parties, such practice has been upheld numerous times. 2 Newberg on Class Actions, supra, § 11.20; see Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1305 (9th Cir.1990) (noting that "[f]ederal courts have frequently approved [cy pres awards] in the settlement of class actions where the proof of individual claims would be burdensome or the distribution of damages costly."). While we have recognized the merits of using fluid recovery awards, we have also expressed caution regarding the use of such awards to circumvent individualized proof requirements and alter the substantive rights at issue. In re Hotel Tel. Charges, 500 F.2d 86, 89-90 (9th Cir.1974) (holding that "allowing gross damages by treating unsubstantiated claims of class members collectively significantly alters substantive rights under the antitrust statutes[]" and is prohibited by the Rules Enabling Act).

60
We have left open the question of whether a cy pres award can ever be used as a substitute for actual damages. See Six (6) Mexican Workers, 904 F.2d at 1306 (noting that the concerns raised in In re Hotel "about the impermissible circumvention of individual proof requirements" were not at issue "where the underlying statute permits awards without a showing of actual damage"). However, we need not reach this question here. In this case, there is no evidence that proof of individual claims would be burdensome or that distribution of damages would be costly. Moreover, the cy pres award circumvents individualized proof requirements and alters the substantive rights at issue in this case. Thus, the use of the cy pres award was inappropriate.

61
Because the consent decree released almost all of the absent class members' claims with little or no compensation, the settlement agreement was unfair and did not adequately protect the interests of the absent class members. See Crawford, 201 F.3d at 881; cf. Linney, 151 F.3d at 1242 (holding that a settlement was fundamentally fair when it created a $6 million settlement fund for the plaintiff class without releasing their claims and provided extensive injunctive relief).

E. Adequate Representation

62
Appellants argue that the class representative and class counsel failed to adequately represent the unnamed class members as required under Rule 23(a)(4). "We review the district court's determination regarding adequacy of representation for an abuse of discretion." Kayes v. Pac. Lumber Co., 51 F.3d 1449, 1464 (9th Cir. 1995).

63
"Adequate representation `depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" Crawford v. Honig, 37 F.3d 485, 487 (9th Cir.1995) (amended opinion) (quoting Ticor Title I, 982 F.2d at 390).

64
The District Court found that class counsel had significant experience litigating ADA cases. In addition, there is an apparent shared interest between the named plaintiff and the absentees to remedy the inaccessibility of the ARCO facilities. Amchem, 521 U.S. at 625-26, 117 S.Ct. 2231 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (citation and internal quotation marks omitted). Molski, a mobility-impaired individual, suffered similar injury (i.e., denial of access to filling and service stations) as the class and shared the same interest in improving accessibility to ARCO facilities.

65
However, certain facts raise concerns regarding the adequacy of the representation. The record does not show whether Molski suffered in the same manner as others in the class may have. For example, the Unruh Civil Rights Act prohibits businesses from refusing to buy from, contract with, or sell goods to individuals with disabilities. Cal. Civ.Code. § 51.5. In addition, the Act permits the jury to award in excess of the statutory amount in egregious circumstances. See Boemio, 954 F.Supp. at 209 (stating that an award exceeding the statutory minimum award would have been appropriate if "[p]laintiff had soiled himself, been observed by others, [or] ridiculed ... in seeking to relieve himself"). Nothing in the record indicates that any such egregious circumstance befell Molski or that he suffered from emotional distress based on such an incident. Nevertheless, under the consent decree, all of these claims were released for the absent class members.

66
Moreover, we are concerned about the possible collusiveness between the named plaintiff, class counsel, and defendants. The record shows that the named plaintiff and defendants reached an agreement regarding the primary components of the consent decree within four months. Although this fact does not amount to collusiveness per se as argued by Appellants, it indicates that the named plaintiff and class counsel "failed to prosecute or defend the action with due diligence and reasonable prudence." Class Plaintiffs, 955 F.2d at 1278 (quoting Restatement (Second) of Judgments § 42(1)(2) (1982)). In addition, this fact must be considered in light of the ultimate terms of the decree, which waived practically all of the class members' claims without compensation and allowed the defendants to escape with little penalty. Although recognizing that this is a close question, we conclude that the District Court abused its discretion in finding that the named plaintiff and class representative Molski and his counsel "fairly and adequately protect[ed] the interests of the class." Fed.R.Civ.P. 23(a)(4).

III.

67
Under the consent decree, claims of statutory and actual damages, other than those involving physical injury, were released. The District Court abused its discretion by failing to afford notice and the right to opt-out because substantial monetary damages were released and by failing to require adequate notice. The terms of the consent decree were unfair, inadequate, and unreasonable for the absent class members and consequently demonstrate that the named plaintiff and class counsel failed to prosecute the action with due diligence and reasonable prudence as required under Rule 23(a)(4). Although we are always cautious to reverse the certification of a class and approval of a settlement agreement because of the time and effort dedicated by the parties and the district court, we are compelled to do so in this case because of the unjust terms of the decree.

68
REVERSED AND REMANDED.

Notes:

1
In April 2000, ARCO became a subsidiary of BP America Inc., whose parent company is BP p.l.c. These entities are collectively referred to as "ARCO."

2
ARCO bore the costs of providing notice to the putative class members

3
The completion of the enhancements was staggered among years one, four, and six

4
The payments are earmarked for the following eight organizations: Independent Living Resource Center; Californians for Disability Rights; Southern California Rehabilitation Services; Disabled Resources Center, Inc.; Independent Living Services of Northern California; Center for Independent Living; Californians for Disability Rights; and Dayle McIntosh Center for the Disabled

5
Appellants also contend that the District Court erred by exercising supplemental jurisdiction over the state disability law claims under 28 U.S.C. § 1367(a). Because Appellants waived this issue below, it need not be addressedAcri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir.1997) (en banc) (citing Doe by Fein v. District of Columbia, 93 F.3d 861, 871 (D.C.Cir.1996) (per curiam)). Moreover, even if we considered the merits, Appellants' argument would fail. The District Court had supplemental jurisdiction over these claims under 28 U.S.C. § 1367. See Botosan v. Paul McNally Realty, 216 F.3d 827, 829 (9th Cir.2000) (addressing the plaintiff's claims under the ADA and the California Unruh Civil Rights Act).

6
Section 51 provides:
All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.
Cal. Civ.Code § 51(b).

7
Section 51.5 provides:
No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state because of the race, creed, religion, color, national origin, sex, disability, or medical condition of the person or of the person's partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers, because the person is perceived to have one or more of those characteristics, or because the person is associated with a person who has, or is perceived to have, any of those characteristics.
Cal. Civ.Code § 51.5(a).

8
Named plaintiff Molski sought statutory damages under both sections 52(a) and 54.3 in his original complaint; however, he did not include statutory damages in his amended class complaint

9
Rule 23(a) provides:
Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
Fed.R.Civ.P. 23(a).

10
A Rule 23(b)(3) class is appropriate "when a class action is superior to other available methods for adjudication of the controversy and common questions predominate over the individual ones." 1 Herbert B. Newberg and Alba Conte,Newberg on Class Actions § 4.01 (3d ed.1992) (hereinafter "Newberg on Class Actions"). In contrast to Rule 23(b)(3), classes certified under subdivisions (b)(1) and (b)(2) are more narrow and do not include the right to opt-out. Id. (noting that Rule 23(b)(3) is more comprehensive than Rule 23(b)(1) or (b)(2), which are more specific in design); see Ticor Title Ins. Co. v. Brown, 511 U.S. 117, 121, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994). A Rule 23(b)(1) class may be certified to avoid prejudice to the defendant or absent class members if multiple individual actions were pursued instead of a class suit resulting in a single adjudication. Newberg on Class Actions, supra, § 4.01.

11
This argument also raises the question of whether actions involving monetary damages are only certifiable under Rule 23(b)(3)

12
In fact, the Supreme Court has stated that there is "at least a substantial possibility" that actions seeking monetary damages are only certifiable under Rule 23(b)(3), which provides class members the right to opt-outTicor Title II, 511 U.S. at 121, 114 S.Ct. 1359; see also Allison v. Citgo Petroleum Corp., 151 F.3d 402, 411 n. 3 (5th Cir.1998) ("We recognize that the Supreme Court's decision in [Ticor Title II] casts doubt on the proposition that class actions seeking money damages can be certified under Rule 23(b)(2).").

13
Appellee ARCO argues thatOrtiz is wholly distinguishable because it involved a Rule 23(b)(1) class, whereas the present case involves a Rule 23(b)(2) class. This argument is without merit because these concerns would be applicable to any mandatory class, whether under Rule 23(b)(1) or (b)(2). Jefferson, 195 F.3d at 897 (stating that the Court's reasoning in Ortiz equally applies "when a request for an injunction is being used to override the rights of class members to notice and an opportunity to control their own litigation").

14
Appellants argue that this Court has implicitly adopted theAllison rule, citing to cases in which we have stated that monetary damages are only allowable if they are "incidental to the[ ] primary claim for injunctive relief." Probe, 780 F.2d at 780; see Kanter, 265 F.3d at 860. However, a review of these cases demonstrates that, in contrast to Allison, our use of the word "incidental" was intended to mean "secondary" to injunctive relief.

15
The Second Circuit described a similar approach inRobinson:
Although the assessment of whether injunctive or declaratory relief predominates will require an ad hoc balancing that will vary from case to case, before allowing (b)(2) certification a district court should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits.
267 F.3d at 164.

16
The due process concerns raised by the release of treble damages could have been addressed in several manners: (1) the District Court could have certified the class under Rule 23(b)(3); (2) the District Court could have bifurcated the claims and certified the class under Rule 23(b)(2) and (b)(3); or (3) the District Court could have certified the class under Rule 23(b)(2), giving the class members the right to opt-out under its discretionary authority as provided in Rule 23(d)(2)See Jefferson, 195 F.3d at 897-98 (remanding to the district court for determination of whether certification was appropriate under Rule 23(b)(2) and providing the listed options); see also Robinson, 267 F.3d at 166 ("[A]ny due process risk posed by (b)(2) class certification of a claim for non-incidental damages can be eliminated by the district court simply affording notice and opt out rights to absent class members for those portions of the proceedings where the presumption of class cohesion falters....").

17
Appellees argue that the panel should summarily dismiss Appellants' notice argument because they did not file an interlocutory September 6, 2000 order, conditionally certifying the class under Rule 23(f). Appellees' contention is without merit. Rule 23(f) provides for "permissive interlocutory appeal[s]" of district court orders granting or denying class certification within ten days after entry of the order. Fed.R.Civ.P. 23(f) advisory committee's note. Nothing in our case law indicates that failure to file apermissive interlocutory appeal under Rule 23(f) waives an appeal after the final certification order.

18
Rule 23(d) provides:
Orders in Conduct of Actions. In the conduct of actions to which this rule applies, the court may make appropriate orders:... (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action....
Fed.R.Civ.P. 23(d)(2).

19
Rule 23(c)(2) provides:
In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel.
Fed.R.Civ.P. 23(c)(2).

20
Appellees suggest that this would have been over and under-inclusive. However, the concern with over-inclusiveness would have been addressed by the language of the notice itself that specifies that the proposed consent decree covered only those "persons with a mobility disability" who had experienced any problems with disability access or were deterred by such problems. The concern with under-inclusiveness would have been addressed by the other types of notice that occurred

21
It appears that the District Court's misplaced belief regarding the preservation of actual damages was a primary reason for its approval of the decree

22
Appellants also argue that the District Court abused its discretion by approving the consent decree, despite its allegedly more lenient requirements for constructions and modifications than those required under the ADA. In particular, Appellants assert that the consent decree changes the definitions of "new construction," "existing facilities," and "alterations," and materially alters the required completion dates as well as defenses available under the ADA
Assuming arguendo that the consent decree sets forth lower standards than those required under the ADA, Appellants' argument still fails because the consent decree need not impose all the obligations and duties set forth in the ADA and its regulations. United States v. Oregon, 913 F.2d 576, 581 (9th Cir.1990) ("[A] consent decree need not impose all the obligations authorized by law.") (citations omitted). Moreover, the federal government can still compel ARCO to comply with the full extent of the ADA by filing suit. 42 U.S.C. § 12188(b) (authorizing the Attorney General to commence civil actions in district court to enforce compliance under the subchapter). Thus, Appellants' argument fails.

23
The State of California estimates the number of disabled individuals living in California at 6.2 million. Quick Facts: Services to Californians with Disabilities,available at http:// www.ca.gov. Assuming that one million of these individuals are mobility-impaired and that half of these individuals have experienced discrimination and have been deterred from going to ARCO-branded facilities, the consent decree permits ARCO to escape potential liability of $500 million (for statutory minimum damages of $1,000, not including actual or treble damages) in exchange for $195,000 in tax-deductible donations; $55,000 to the named plaintiff and class counsel; and the cost of making their facilities accessible as already required by federal law.

69
GRABER, Circuit Judge, specially concurring.

70
The majority refuses to approve the consent decree for several reasons. In my view, one of its main reasons is incorrect as a matter of California law, and another is incorrect as a matter of logic and sound public policy; but our decision in Brown v. Ticor Title Insurance Co., 982 F.2d 386 (9th Cir.1992), compels us to reject the consent decree. Accordingly, I concur specially in the result.

A. Actual Damages

71
A central theme of the majority's opinion is that the consent decree is unfair because it releases nearly all potential claims by members of the plaintiff class for actual damages. The majority's underlying premise is incorrect. The representative plaintiff, the defendant, and the district court all agree that the ambiguous consent decree does not release class members' claims for actual damages. The majority's antithetical interpretation of the decree contravenes settled law.

72
In construing a consent decree, we apply the same principles used to interpret a contract. Thompson v. Enomoto, 915 F.2d 1383, 1388 (9th Cir.1990). The rules of contract interpretation of the situs state, here California, govern. Gates v. Rowland, 39 F.3d 1439, 1444 (9th Cir.1994). Under California law, interpretation of a consent decree or a contract begins with an analysis of the agreement's text. Thompson, 915 F.2d at 1388.

73
That text supports Defendant's assertion that the consent decree releases only claims for statutory and treble damages under the Americans with Disabilities Act (ADA) and similar California statutes:

74
• First, the release applies only to claims "arising under" or "based upon" the cited statutes. Accordingly, all unrelated common law claims — including those for premises liability, intentional infliction of emotional distress, and negligence — as well as all other statutory claims, remain available to potential plaintiffs.

75
• Second, even with respect to the released claims, the consent decree provides that they "do not include personal injury claims involving physical injury to a plaintiff." (Emphasis in original.) That clause preserves a large number of claims, including nearly all those for which a plaintiff's damages could exceed the statutory minimum.1

76
Thus, the wording of the consent decree supports Defendant's argument that the decree does not release claims for actual damages. However, California law requires us to look beyond the text. We must interpret the consent decree so as "`to give effect to the mutual intention of the parties as it existed at the time of contracting.'" Gates, 39 F.3d at 1444 (quoting Thompson, 915 F.2d at 1388 (citing Cal. Civ.Code § 1636)). Although we are to determine the parties' intention from the words of the consent decree when possible, id., in many circumstances we may also look to other sources to determine what the parties had in mind. For example, when the text of a consent decree is ambiguous, we look to extrinsic evidence to discern the parties' true intent. S.F. NAACP v. S.F. Unified Sch. Dist., 896 F.2d 412, 414 (9th Cir.1990); United States v. ITT Cont'l Baking Co., 420 U.S. 223, 238 & n. 11, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975).

77
The text of the consent decree is ambiguous in two ways. First, it is unclear what types of claims are "based upon" the ADA or California disability law. For example, a plaintiff asserting a claim for negligent infliction of emotional distress must prove that the defendant's breach of a duty imposed by law proximately caused the plaintiff to experience emotional distress. Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795, 807-08 (1993). Here, the relevant duty would be imposed by statutes requiring that Defendant provide adequate access for disabled persons. Is this type of claim "based upon" the ADA or California disability law and thereby released, or does the release apply only to those claims brought directly pursuant to these statutes? A similar problem is presented by negligence per se claims in which the law violated is the ADA or California disability law. Are such claims preserved by the decree, or are they "based upon" the statutes from which they borrow a duty of care?

78
A second ambiguity arises from the clause stating that "[t]he Released Claims do not include personal injury claims involving physical injury to a plaintiff." (Emphasis in original.) Although the majority asserts that this clause unambiguously fails to preserve claims for actual damages arising from emotional distress,2 that conclusion ignores two points. First, the preserved claims are all those that "involv[e]" physical injury, not merely those narrower claims "for" physical injury or "based on a" physical injury. Second and relatedly, California courts repeatedly have eschewed the attempt to draw a bright line between physical injury and emotional distress; according to California courts, claims for emotional distress typically "involve" a physical component. See, e.g., Abellon v. Hartford Ins. Co., 167 Cal. App.3d 21, 212 Cal.Rptr. 852, 855 (1985) ("Even doctors have a difficult time distinguishing between `mental' and `physical,' because every emotional disturbance has a physical aspect and every physical disturbance has an emotional aspect." (citation and internal quotation marks omitted)); Molien v. Kaiser Found. Hosps., 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813, 820-21 (1980) ("[T]he border between physical and emotional injury is not clearly delineated.... In our view ... the attempted distinction between physical and psychological injury merely clouds the issue."). For these reasons, it is unclear from the text of the release whether the parties intended to foreclose claims for emotional distress or, instead, to preserve them as claims "involving physical injury."

79
Because the consent decree is ambiguous in these two ways, California law demands that we go beyond the text of the consent decree to discern the true intent of the parties. Once we do so, the majority's premise is untenable. The parties' intent to preserve class members' claims for actual damages is unmistakably clear. As the majority points out, Defendant repeatedly stated both on the record and publicly that the consent decree does not release claims for actual damages. Maj. op. at 946. The representative plaintiff, too, argues that this was the parties' intent. Further, the district court, which had a better opportunity to delve into the parties' intent than an appellate panel does on a cold record, explained that "the consent decree preserves the right of class members to bring claims against ARCO for actual damages." In other words, all available extrinsic evidence suggests that the parties intended that the decree would preserve class members' claims for actual damages.

80
Finally, even if the consent decree were unambiguous, as the majority asserts, California law still would require us to look beyond the face of the consent decree to the true intentions of the parties.3 Under state law, extrinsic evidence is admissible to aid contract interpretation even when the text is clear. Trident Ctr. v. Conn. Gen. Life Ins. Co., 847 F.2d 564, 568 (9th Cir.1988) (noting that "California does not follow the traditional rule.... [It has] turned its back on the notion that a contract can ever have a plain meaning discernible by a court without resort to extrinsic evidence."). As the California Supreme Court has explained, "[t]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co., 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641, 644 (Cal.1968). So, whether or not the text of the consent decree is ambiguous, California law requires us to consider extrinsic evidence of the parties' intent. As discussed above, that evidence clearly establishes that the decree was not meant to release claims for actual damages.

81
In summary, I would give effect to the parties' intentions and hold that the consent decree does not release class members' claims for actual damages.

B. Adequate Representation

82
I do not share the majority's suspicion that the consent decree in this case was a product of collusion. The majority's inference rests on two untenable grounds.

83
First, the majority relies on its view that "the ultimate terms of the decree ... waived practically all of the class members['] claims without compensation." Maj. op. at 956. As explained above, class members' claims for actual damages were not waived.

84
Second, the majority faults the parties for reaching "an agreement regarding the primary components of the consent decree within four months." Maj. op. at 955. Early dispute resolution is salutary, and we should not encourage the unnecessary expense, delay, and uncertainty caused by lengthy litigation when the parties are prepared to compromise. Nor should we hold, as the majority does, maj. op. at 956, that a prompt settlement necessarily suggests a failure to prosecute or defend the action with due diligence and reasonable prudence. To the contrary, an early resolution may demonstrate that the parties and their counsel are well prepared and well aware of the strengths and weaknesses of their positions and of the interests to be served by an amicable end to the case.

85
In summary, I would hold that the district court did not abuse its discretion in finding that the named plaintiff and his counsel fairly and adequately protected the interests of the class, as required by Federal Rule of Civil Procedure 23(a)(4).

C. Treble Damages

86
Under our precedent, statutory treble damages may be significant enough to require that each class member have an opportunity to opt out of the litigation, as a matter of due process. Brown, 982 F.2d at 387, 392. Here, class members did not have that opportunity, but the settlement released statutory minimum and treble damages, which are significant. For that reason, we have no choice but to reverse and remand.

87
For this reason, I concur in the judgment.

Notes:

1
The majority cites claims for "property damages" as one type of claim that would be released under this clause. Maj. op. at 1578. I disagree for two reasons. First, many claims for property damage could be brought as common law claims, for example based on theories of negligence or premises liability. Second, most cases in whichsignificant property damage occurs are likely to "involv[e]" physical injury.

2
Under California law, a claim for emotional distress is classified as a personal injury claimSee, e.g., Cantu v. Resolution Trust Corp., 4 Cal.App.4th 857, 6 Cal.Rptr.2d 151, 170 (1992) (holding that "intentional infliction of emotional distress is an injury to the person"; Billmeyer v. Plaza Bank of Commerce, 42 Cal.App.4th 1086, 50 Cal.Rptr.2d 119, 125 (1995) (holding that claims for intentional and negligent infliction of emotional distress are barred by the one-year statute of limitations for "personal injury actions").

3
But see Gates v. Rowland, 39 F.3d 1439, 1444 (9th Cir.1994) (suggesting that the Ninth Circuit, applying California law, does not examine extrinsic evidence if the text of the consent decree is clear); Thompson v. Enomoto, 915 F.2d 1383, 1388 (9th Cir.1990) (same). These cases are unpersuasive on this particular point, however, because they are internally inconsistent. Although they purport to apply California contract law, they misconstrue state law regarding the admissibility of extrinsic evidence.