**Connie ARNOLD, et al., Plaintiffs,**

v.

**UNITED ARTISTS THEATRE CIRCUIT, INC., Defendant.**

No. C 93–0079 TEH.

United States District Court,
N.D. California.

April 15, 1994.

**434**

Laurence W. Paradis, Miller Starr & Regalia, Oakland, CA, Elaine Feingold, Disability Rights Education & Defense Fund, Inc., Berkeley, CA, for Connie Arnold.

Laurence W. Paradis, Miller Starr & Regalia, Oakland, CA, Brad Seligman, Disability Rights Education & Defense Fund, Inc., Berkeley, CA, for remaining plaintiffs.

Peter I. Ostroff, Sidley & Austin, Los Angeles, CA, Michael W. O'Neil, Orinda, CA, for United Artists Theatre Circuit, Inc. dba UA Emery Bay.

David H. Raizman, Los Angeles, CA, for amici curiae California Association of Persons with Handicaps, California Foundation of Independent Living Centers.

Jane Curran Pandell, Randy Wright, Pandell Norvich & Borsuk, Walnut Creek, CA, for Raad/Uesugi & Associates, Stan Stanovich, Heidenfrost/Harowits & Associates.

Patrick M. Glenn, Hanson Bridgett Marcus Vlahos & Rudy, San Francisco, CA, for Irwin Seating Co.

Stephen B. Goldberg, Spierer Woodward Denis & Furstman, Redondo Beach, CA, Thomas J. Wolf, Myer Swanson & Adams, Denver, CO, for Proctor Co.

Timothy L. McInerney, McInerney & Dillion, P.C., Oakland, CA, for Tolladay Const. Co., Inc.

## MEMORANDUM OPINION AND ORDER

THELTON E. HENDERSON, Chief Judge.

This case is a suit by disabled persons who use wheelchairs or who walk using aids such as crutches, brought against United Artists Theatre Circuit, Inc. ("United Artists" or "UA"). Plaintiffs charge that defendant's movie theaters do not afford disabled persons full and equal access to their accommodations, in violation of California and federal law.

United Artists has moved to dismiss plaintiffs' claims under California Civil Code § 54.1 ("§ 54.1") and California Civil Code § 51 ("§ 51") insofar as the claims seek damages on the basis of incidents in which disabled plaintiffs do not allege that they were actually afforded legally inadequate accommodations at UA theaters, but rather claim that they were "deterred" from attending UA theaters by their knowledge of the theaters' failure to conform with the disability access standards mandated under those two laws. The Court heard oral argument on this matter on February 14, 1994. After careful consideration of the parties' written and oral arguments, the Court DENIES UA's motion to dismiss plaintiffs' claims for damages under § 54.1 and § 51 based on incidents of deterrence. The reasons for this ruling are set forth in the memorandum opinion and order that follows.

## I. NATURE OF THE MOTION

In their pleadings, plaintiffs attempt to assert claims for relief on behalf of persons who allege that they were "deterred" or "dissuaded" from attending or attempting to attend one or more of defendant's theaters as a result of their knowledge that one or more of the theaters did not provide legally adequate

accommodations for disabled persons. Second Amended Complaint ¶¶ 5, 6, 15; Proposed Class Certification Order ¶ B(2)(b). Of the various California and federal causes of action that they plead, plaintiffs seek relief in the form of damages only on their claims under California Civil Code § 54.1 and California Civil Code § 51. Defendants have thus moved to dismiss the request for damages for instances of deterrence on the ground that California Civil Code § 54.1 and § 51 do not extend to deterred persons a cause of action for a damages remedy.

## II. LEGAL STANDARD

■ Dismissal of a claim alleged in a complaint is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when the cause of action pleaded fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) is the appropriate vehicle for challenging whether a particular cause of action may be asserted by a particular category of plaintiff over a particular type of alleged harm. *Geir v. Educational Service Unit No. 16,* 144 F.R.D. 680, 687–88 (D.Neb.1992). Such dismissal should be granted where the claim in question is one that, as a matter of law, may not be asserted by the category of plaintiff at issue with respect to the type of harm alleged.

## III. DISCUSSION

### A. STATUTORY TEXT AND CASE LAW

■ The question of the availability of damages for "deterrence" claims under § 54.1 and § 51 appears to be an issue of first impression as the parties have located no California case law directly addressing the issue. California courts have prescribed the following analytic approach for interpreting California statutes: where the words of the statute are not ambiguous and their plain meaning can be given effect, that meaning controls; however, where statutory text is ambiguous and does not resolve the issue in question, courts must then consult the variety of canons and rules of statutory construction that California courts have prescribed for application in different contexts. *Estate of Wilson,* 265 Cal.App.2d 943, 950, 71 Cal. Rptr. 822 (1st Dist.1968) (citing *County of*

*Sacramento v. Hickman,* 66 Cal.2d 841, 59 Cal.Rptr. 609, 428 P.2d 593 (1967)).

### 1. CALIFORNIA CIVIL CODE § 54.1

■ California Civil Code § 54.1, California's chief disability access law known as the Disabled Persons Act, confers on disabled persons a right of full and equal access to places of public accommodation. The particular disability access standards which places of public accommodation must satisfy are set forth in administrative regulations promulgated by the Office of the State Architect pursuant to the statutory authorization contained in California Government Code § 4450. *See* Calif.Bldg.Code, Cal.Code Regs. tit. 24, Part 2. However, the class of persons who may sue for damages for violations of these access standards, and the circumstances under which non-conforming facilities vest members of that class with a cause of action for damages, are determined by § 54.1 and by California Civil Code § 54.3 ("§ 54.3"), the code section authorizing a damage remedy for violations of the rights conferred under § 54.1.

The text of § 54.1 reads:

Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, and privileges of all ... places of public accommodation, amusement, or resort, and other places to which the general public is invited ....

Cal.Civ.Code § 54.1(a). California Civil Code § 54.3, the damages provision, in turn states:

Any person, firm, or corporation *who denies or interferes with* admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1, and 54.2 is liable [for certain damages], suffered by any person denied any of the rights provided in Sections 54, 54.1, and 54.2.

(Emphasis added). Defendant argues that the plain meaning of the emphasized language is that in order for a person to be

deemed to have been "denied" or to have "suffered interference with" her admittance to or enjoyment of public facilities, the person must actually have attended the place of public accommodation, suffering inferior accommodations there, or attempted to attend, being turned away at the door due to the inadequate accommodations. However, the Court concludes that this interpretation reads too much into § 54.3's language and begs the question of whether violations of access standards that deter disabled people from even trying to attend places of public accommodation constitute "deni[al of] or interfere[nce] with admittance to or enjoyment of" covered facilities. Particularly in light of the above language providing for damages where an owner "otherwise interferes" with access rights of the disabled, it appears to the Court that the text of § 54.3 could easily be construed as encompassing deterrence claims.

As for case law, there appears to be only one reported case from a California intermediate appellate court that arguably sheds light on this issue. That case, *Donald v. Cafe Royale, Inc.*, 218 Cal.App.3d 168, 266 Cal.Rptr. 804 (1st Dist.1990), was a suit by a wheelchair-confined disabled person against a restaurant at which most of the tables were not wheelchair-accessible, in violation of the California Building Code, and the portion of the seating that was wheelchair-accessible was inferior to the seating available for able-bodied persons. The plaintiff, who had actually visited the restaurant in person where he had been told of the sub-standard seating situation, sued under § 54.1 and other state laws. The court of appeals reversed the trial court's judgment for the defendant and ordered that the plaintiff be awarded damages.

Although the case thus did not concern persons suing over instances of alleged deterrence, the court engaged in the following discussion:

> [Health & Safety Code §] 19955 *et seq.*, [Government Code §] 4450 *et seq.* and [Civil Code §] 54 *et seq.*, taken together, provide for a two-fold procedure. A designated public agency or an individual may initiate an action to *enforce compliance* with the handicapped access standards provided

for by § 19955 *et seq.* and § 4450 *et seq.* On the other hand, to maintain an action for *damages* pursuant to § 54 *et seq.* an individual must take the additional step of establishing that he· or she was denied equal access on a particular occasion. Thus, [plaintiff] was entitled to an award of damages in the instant case. . . . For example, let us take a restaurant that is required to have 100 percent of its dining area accessible to the handicapped, but in fact only 90 percent of the dining area meets this standard. If the handicapped individual is readily seated and served in the 90 percent primary dining area which meets all handicap access requirements, then he or she would not have a cause of action for damages for denial or interference with admittance pursuant to Civil Code § 54.3, but an individual or a designated public agency could pursue an action under one of the enforcement provisions to bring about full compliance by the restaurant.

*Donald*, 266 Cal.Rptr. at 813 (emphasis in original). On a quick read, this discussion might appear to indicate that a disabled private plaintiff must actually present herself at a place of public accommodation and be denied adequate service before she may bring a claim for damages. However, after careful consideration the Court concludes that such an interpretation would be misplaced. First and most importantly, the above discussion appears neither to address the question of whether, nor to be inconsistent with the view that, deterrence claims are actionable under § 54.3. The discussion concerns a hypothetical scenario in which 90% of the tables in a restaurant conform with the requirement of wheelchair-accessibility and 10% do not. The court made the unremarkable observation that, in such a context, a wheelchair-using disabled person who showed up and was given one of the wheelchair-accessible tables could not state a claim for damages under § 54.3 as she would not have had her "admittance to or enjoyment of the public facilit[y]" "denie[d] or interfere[d] with." The court's hypothetical does not in any away address the situation where all or nearly all of a restaurant's tables are not wheelchair-accessible and a wheelchair-using dis-

abled would-be patron, knowing of this total or near total nonconformity with access standards, is deterred from even trying to dine there. Whether such an instance of deterrence on a particular occasion states a claim for damages under § 54.3 is the question presented on this motion, and the *Donald* hypothetical offers no guidance as to the answer.

The Court also notes that, in any event, the *Donald* court's discussion of its hypothetical was dictum since in *Donald* there was no dispute that the plaintiff had clearly been denied adequate service. Moreover, it is clear that the *Donald* court was not speaking to the issue of deterrence claims and so, even if the court's discussion might on some level appear to preclude such claims, that inference would be one that the court almost certainly did not intend readers to draw from its opinion. For the foregoing reasons, the Court concludes that the text of § 54.3 is inconclusive as to the availability of damages for incidents of deterrence and that the California case law sheds no light on this question either.

## 2. CALIFORNIA CIVIL CODE § 51

■ California Civil Code § 51, known as the Unruh Civil Rights Act, bans various types of discrimination, including discrimination against the disabled, in places of public accommodation. The text of § 51 reads, in pertinent part:

> All persons within the jurisdiction of this state are free and equal, and no matter what their ... disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

California Civil Code § 52 ("§ 52"), the code section providing for a damage remedy for violations of § 51, in turn states, in pertinent part:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 or 51.5, is liable for each and every offense for [certain damages].

Cal.Civ.Code § 52(a). As to § 51, defendant makes no argument that the provision's text

bars deterrence claims. Rather, UA simply makes the unexceptional point that such claims are not expressly authorized. The language of § 51 and of its damage remedy provision, § 52, are opaque as to the actionability of deterrence claims.

As for case law, defendant cites language from a footnote in an Unruh Act case brought by several gay men who charged that they were wrongly denied admission to a bath house for arbitrary or otherwise unfair reasons. That language states that a plaintiff seeking to assert a claim for "actionable ejection or exclusion" under § 51 would, under the facts of that case, have to

> establish that he presented himself to [the bath house] and demanded admittance, that he tendered the admission fee, that he was ejected or refused admission, that he possessed one or more of the [allegedly protected] enumerated characteristics, and that his ejection or exclusion was otherwise without good cause.

*Bartlett v. Hawaiian Village, Inc.,* 87 Cal. App.3d 435, 151 Cal.Rptr. 392, 394 n. 6 (1st Dist.1978). However, like in *Donald,* it appears clear that any inference regarding the availability of deterrence claims under § 51 supported by this language was certainly unintended by the writing court since allegations of deterrence played no part in the case. Rather, the plaintiffs were suing over instances on which they were actually denied admission. The quoted language listing the elements plaintiffs would have to prove in order to state a claim under the Unruh Act was offered in the course of a discussion of the appropriateness of certification of the claims as a class action. In light of this context, the Court declines to read into this passing discussion an opinion on a legal issue that was not raised in the case.

## B. CANONS FOR CONSTRUING AMBIGUOUS STATUTES

■ The Court concludes that the statutory text of § 54.1, § 54.3, § 51, and § 52 is ambiguous as to the availability of damages for instances of deterrence, and that the existing California case law does not resolve the question. As noted above, under the rules for construing California statutes pre-

scribed by California courts, when the plain meaning of statutory text does not resolve an interpretive question, courts must then make resort to canons of statutory construction in order to ascertain the legislature's intent as regards the question at issue.

California courts have applied a canon of broad construction to civil rights statutes generally, and to § 51 and § 54.1 in particular. Regarding § 51, the Unruh Act, "The [California] Legislature's desire to banish [discrimination] from California's community life has led [the California Supreme Court] to interpret the [Unruh] Act's coverage 'in the broadest sense reasonably possible.'" *Isbister v. Boys' Club of Santa Cruz*, 40 Cal.3d 72, 75–76, 219 Cal.Rptr. 150, 152, 707 P.2d 212 (1985) (quoting *Burks v. Poppy Construction Co.*, 57 Cal.2d 463, 468, 20 Cal.Rptr. 609, 370 P.2d 313 (1962)). A similar presumption in favor of broad interpretation in order to further the statute's remedial purpose has been applied in § 54.1 cases. *See Donald*, 266 Cal.Rptr. at 808–11. In particular, California courts have held that the California disability access laws should be interpreted in a fashion that maximizes the incentives for places of public accommodation to comply with the laws' requirements. *See id.* (interpreting § 54.1 as not requiring proof of discriminatory intent in order to establish a violation).

In *Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the U.S. Supreme Court held that persons who are deterred from even trying to apply for a job because of an employer's entrenched discriminatory hiring practices can state a claim for relief under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, the federal employment discrimination statute. 431 U.S. at 365–67, 97 S.Ct. at 1869–70. Like the California disability access laws at issue here, the text of Title VII was ambiguous as to whether it rendered incidents of deterrence actionable. The Court reasoned that Congress's intent to provide a complete remedy for employment discrimination would be frustrated unless Title VII were construed as encompassing deterrence claims. Otherwise,

> The denial of Title VII relief on the ground that the claimant had not formally applied

for the job could exclude from the Act's coverage the victims of the most entrenched forms of discrimination. Victims of gross and pervasive discrimination could be denied relief precisely because the unlawful practices had been so successful as totally to deter job applications from members of minority groups.

*Teamsters*, 431 U.S. at 367, 97 S.Ct. at 1870. *See also United States v. Lansdowne Swim Club*, 713 F.Supp. 785, 819–23 (E.D.Pa.1989) (treating incidents of deterrence as evidence of relevant discrimination in race-based public accommodations suit brought by federal government under Title II of the 1964 Civil Rights Act), *aff'd*, 894 F.2d 83 (3d Cir.1990).

Similar policy considerations militate strongly in favor of recognizing deterrence claims under the California disability access laws. Otherwise, the most egregious violators would largely escape liability for damages under the laws since, where it is well-known that a particular establishment has no adequate accommodations for disabled persons, few disabled would-be patrons would make the futile and probably humiliating gesture of showing up and asking to be accommodated. Indeed, unlike most employment cases where the deterring conduct is largely subjective and is subject to differing interpretations, the existence of, for instance, an architectural disability access barrier is an objectively ascertainable fact and therefore is even more likely to have a deterring effect.

Defendant argues that deterrence claims should not be recognized in the public accommodations context because they cannot really be disproven and so are susceptible to fraudulent assertion. Defendant contends that with employment discrimination claims, there are showings that a person claiming deterrence must make that serve to limit the universe of plaintiffs who may bring such claims and thereby reduce fraud. In such employment cases, plaintiffs must at least show—in addition to discrimination—that they were on the job market, that there was a job opening with the employer, and that they were qualified for the job.

In contrast, defendant argues, since there are no "qualifications" for attending a place of public accommodation other than having

the economic means to pay the price of admission, there is nothing to limit the number of disabled persons who may allege that they were deterred by a particular access standard violation, or to limit the number of instances of deterrence that each such person may claim. Defendant also stresses that while a Title VII plaintiff alleging deterrence must demonstrate that she suffered actual damages or lost back pay as a result of being deterred, § 51 and § 54.1 claims carry with them an automatic statutory minimum of $250 in damages for each violation. Cal.Civ. Code § 52(a); *Id.* § 54.3.

It is true that because there do not exist "qualifications" for attending places of public accommodation, the class of persons deterred by notoriously discriminatory conduct from attempting to attend a place of public accommodation might not be circumscribed in the way that a deterred plaintiff class often is in employment discrimination cases. However, this is a consequence of the fact that the right to non-discriminatory access to public accommodations is broader than the right to non-discriminatory consideration for employment for which one is otherwise qualified.

The Court has concluded that the statutory language of § 54.1 and § 51, and the California case law interpreting it, are inconclusive as to whether a cause of action for damages exists under these statutes for incidents of deterrence. Failing to recognize deterrence-based damage claims under § 54.3 and § 52 would significantly reduce the incentives for compliance with the disability access requirements of these laws. Since California courts have held that the California disability access laws manifest an intent on the part of the legislature that they be interpreted in a manner that maximizes incentives for compliance, *see Donald,* 266 Cal.Rptr. at 808–11, the Court concludes that application of this canon of construction requires that § 54.1 and § 51, and their respective damages provisions, § 54.3 and § 52, be interpreted as extending to claims based on incidents of deterrence. The Court therefore holds that where a plaintiff can prove that violations of applicable California disability access standards deterred her on a particular occasion from attempting to attend a place of public accom-

modation, that plaintiff states a claim for relief under California Civil Code § 54.1 and § 51 and, in particular, for damages, under § 54.3 and § 52.

## IV. CONCLUSION

For the foregoing reasons, and good cause appearing therefor, it is HEREBY ORDERED that defendant United Artists' motion to dismiss, for failure to state a claim, plaintiffs' claims seeking damages under California Civil Code § 54.1 and California Civil Code § 51 for instances on which plaintiffs were allegedly deterred from attending UA theaters by their knowledge of the existence of inadequate accommodations for the disabled at the theaters is DENIED.

**IT IS SO ORDERED.**