Francie MOELLER, et al., Plaintiffs,

v.

TACO BELL CORPORATION, Defendant.

No. C 02–5849 MJJ.

United States District Court, N.D. California.

Feb. 23, 2004.

Jamerson C. Allen, Jackson Lewis LLP, San Francisco, CA, Gregory A. Eurich, Jimmy Goh, Holland & Hart LLP, Denver, CO, for Taco Bell Corp., Defendant.

Timothy P. Fox, Amy F. Robertson, Antonio Lawson, Fox & Robertson, P.C., Denver, CO, Antonio M. Lawson, Lawson Law Offices, Oakland, CA, for Craig Thomas Yates, Edward Muegge, Francie E. Moeller, Katherine Corbett, Plaintiffs.

## ORDER *GRANTING* PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

JENKINS, District Judge.

### INTRODUCTION

Plaintiffs Francie Moeller et al. bring this case to remedy alleged architectural barriers at Defendant Taco Bell Corporation's corporate-owned and/or operated restaurants in California that Plaintiffs claim discriminate against a large number of patrons who use wheelchairs or scooters. The putative class seeks an injunction ordering Defendant to adopt policies to ensure access for customers who use wheelchairs and scooters, and to bring all of its facilities into compliance with the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), the Unruh Civil Rights Act, California Civil Code § 51 *et seq.* ("the Unruh Act"), and the California Disabled Persons Act, California Civil Code § 54 *et seq.* (the "CDPA"). The putative class seeks the minimum statutory damages per offense under the Unruh Act and the CDPA. Presently before the Court is Plaintiffs' motion for class certification under Rule 23 of the Federal Rules of Civil Procedure. This motion requires the Court to decide whether Plaintiffs have met the requirements set forth in Rule 23 in order that this action may proceed as a class action. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion.

### FACTUAL BACKGROUND

#### A. Named Plaintiffs

The named plaintiffs in this case—Francie Moeller, Ed Muegge, Katherine Corbett and Craig Yates—are among the more than 150,000 Californians who use wheelchairs or scooters for mobility. Declaration of Timothy Fox in Support of Plaintiffs' Motion for Class Certification ("Fox Decl."), Ex. 2 at 2. The named plaintiffs are all active members of their communities, and all are dedicated to advocating for the rights of persons with

disabilities. Ms. Moeller, for example, is a past chair of the Bay Valley District Organization of Business and Professional Women, and is the current chair of the Disability Caucus of the California Democratic Party. Plaintiffs' Motion for Class Certification ("Mot.") at 3. Mr. Muegge taught disability advocacy classes at Sonoma State University and Santa Rosa Junior College, while Ms. Corbett has, on several occasions, testified at legislative hearings on issues relating to persons with disabilities. *Id.* Mr. Yates is a Parks and Recreation Commissioner for the City of San Rafael and is on the Advisory Boards of Golden Gate Transit and the Metropolitan Transit Commission, and both Boards oversee issues concerning use of public transit systems by the elderly and persons with disabilities. *Id.*

### B. The Americans with Disabilities Act

The ADA was enacted in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1); *PGA Tour, Inc. v. Martin,* 532 U.S. 661, 675, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001) (holding that the ADA provides a "broad mandate" to eliminate discrimination against people with disabilities). The statute recognizes that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals." 42 U.S.C. § 12101(a)(8). Title III of the ADA prohibits discrimination on the basis of disability in places of public accommodation, both with respect to the accessibility of their physical facilities and with respect to their policies and practices.[1]

The ADA required the Department of Justice ("DOJ") to issue regulations carrying out the non-transportation requirements of Title III. 42 U.S.C. § 12186(b). Pursuant to this statutory mandate, the DOJ promulgated Standards for Accessible Design ("DOJ Standards"). *See* 28 C.F.R. pt. 36, app. A.[2] The DOJ Standards contain detailed design specifications for public accommodations covering a variety of architectural elements, including, for example, parking lots, food service lines, accessible routes, and restrooms. *Id.*

The accessibility requirements of Title III and the DOJ Standards vary depending on the dates that facilities were constructed or altered. Facilities built after January 26, 1993 are required to be "readily accessible to and usable by" individuals who use wheelchairs, and these facilities must comply with the DOJ Standards. 42 U.S.C. § 12183(a)(3); 28 C.F.R. § 36.406(a). When facilities that were built before that time are altered in certain ways after January 26, 1992, the altered portion and—to a certain extent—the path of travel to the altered portion, must comply with the DOJ Standards. 28 C.F.R. §§ 36.402(b)(2); 36.406(a). In facilities built prior to January 26, 1993 and not altered since January 26, 1992, architectural barriers are required to be removed where it is "readily achievable" to do so. 42 U.S.C. § 12182(b)(2)(A)(iv).[3] In addition, facilities must *"maintain* in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities." 28 C.F.R. § 36.211 (emphasis added).

### C. The Unruh Act and CDPA

Both the CDPA, which was enacted in 1968, and the Unruh Act, which was amended in 1987 to cover persons with disabilities, prohibit discrimination on the basis of disability in the full and equal access to the services, facilities and advantages of public accommodations. Cal. Civ.Code §§ 51(b) (Unruh Act), § 54.1(a)(1) (CDPA). A prevailing plaintiff is entitled to, among other relief, statutory minimum damages regard-

---

1. The parties do not dispute that Taco Bell restaurants are "public accommodations" within the meaning of the ADA and the relevant California disability laws.

2. The DOJ's Title III regulations are "entitled to deference." *Bragdon v. Abbott,* 524 U.S. 624, 646, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).

3. The question of what is readily achievable turns primarily on the nature and cost of the barrier removal and the resources of the public accommodation involved, including "the overall financial resources of any parent corporation or entity." 28 C.F.R. § 36.104; 42 U.S.C. § 12181(9).

less of whether the plaintiff has suffered any actual damages. *Botosan v. Paul McNally Realty,* 216 F.3d 827, 835 (9th Cir.2000) (holding that "proof of actual damages is not a prerequisite to recovery of statutory minimum damages" under the Unruh Act and the CDPA). The putative class seeks only the statutory minimum damages for each offense.

All buildings constructed[4] or altered[5] after July 1, 1970, must comply with standards governing the physical accessibility of public accommodations. *D'Lil v. Stardust Vacation Club,* 2001 WL 1825832, 2001 U.S. Dist. LEXIS 23309 at *21–22 (E.D.Cal.2001). From December 31, 1981 until the present, the standards have been set forth in Title 24 of the California regulatory code (the "California Standards"). *People ex rel. Deukmejian v. CHE, Inc.,* 150 Cal.App.3d 123, 134, 197 Cal.Rptr. 484 (1983). In addition to setting forth design and construction standards, the California Standards require public accommodations to maintain in operable working condition those features of facilities and equipment that are required to be accessible to and usable by persons with disabilities. California Standards § 1101B.3.

A violation of a California Standard constitutes a violation of both the CDPA and the Unruh Act. *See, e.g., Arnold v. United Artists Theatre Circuit, Inc.,* 866 F.Supp. 433, 439 (N.D.Cal.1994). A violation of the ADA also constitutes a violation of both statutes. Cal. Civ.Code §§ 51(f) & 54(c).

### D. Defendant Taco Bell Corporation

Taco Bell Corporation, a subsidiary of Yum! Brands, Inc., sells Mexican fast food throughout the United States and elsewhere. The company owns and/or operates 220 restaurants in California ("corporate restaurants"). *See* Fox Decl., Ex. 3. Although there are other California Taco Bell restaurants operated by Defendant's franchisees, Plaintiffs seek class certification in this case only with respect to patrons of the corporate restaurants.

---

**4.** California Health & Safety Code § 19956.

**5.** California Health & Safety Code § 19959.

### E. Accessibility at Defendant's California Restaurants

Plaintiffs set forth what they allege to be a "consistent pattern of accessibility problems at Defendant's California restaurants." Mot. at 7. Among these are inaccessible: (1) queue lines[6]; (2) entrances; (3) condiment and drink dispensers; (4) dining rooms; (5) restrooms; and (6) parking lots. *Id.* at 7–11.

### LEGAL STANDARD

To maintain a class action under Rule 23, the proponents of the class must first satisfy the four prerequisites of Rule 23(a). According to Rule 23(a), a class may be certified only if:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Federal Rule of Civil Procedure 23(a). If these requirements are met, the proponents must also show that they have met one of the three subsections of Rule 23(b). Here, Plaintiffs seek class certification under Rule 23(b)(2), arguing that Defendant has "acted or refused to act on grounds generally applicable to the class, thereby making appropriate injunctive relief or corresponding declaratory relief with respect to the class as a whole."

The proponents bear the burden of demonstrating that all the prerequisites for class designation are met. *See In re Northern District of California Dalkon Shield IUD Products Liability Litigation,* 693 F.2d 847, 854 (9th Cir.1982). In analyzing whether the class meets the prerequisites noted above, a court is to take the substantive allegations of the complaint as true, and may also consider

---

**6.** A queue line is a path cordoned off with barriers causing patrons to form a single line. Several width requirements apply to queue lines under the ADA and California Standards.

extrinsic evidence submitted by the parties. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975).

## ANALYSIS

Plaintiffs seek certification of the following class:

All individuals with disabilities who use wheelchairs or electric scooters for mobility who, at any time on or after December 17, 2001, were denied, or are currently being denied, on the basis of disability, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of California Taco Bell corporate restaurants.

### A. Rule 23(a) Requirements

#### 1. Numerosity

■ Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. Plaintiffs do not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity. *Bates v. United Parcel Service*, 204 F.R.D. 440, 444 (N.D.Cal. 2001).[7] A court may make common sense assumptions to support a finding that joinder would be impracticable. 1 Robert Newberg, *Newberg on Class Actions*, § 3:3 (4th Ed.2002) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."). In addition, the fact that a class is geographically dispersed, and that class members are difficult to identify, supports class certification. 1 Newberg § 3:6; *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D.Cal.1996).

In this case, census statistics demonstrate that there are approximately 151,000 non-institutionalized people sixteen years of age or older in California who use wheelchairs, and this number does not include institutionalized people who use wheelchairs, people under the age of sixteen years who use wheelchairs, or people who use scooters for mobility, all of whom are potential members of the class.[8] Restaurants covered by the proposed class had more than fifty million transactions in 2002 alone. Taking as true Plaintiffs' allegations that many or all of those restaurants have unlawful architectural barriers, the only way that this class is not numerous is if virtually none of Defendant's fifty million transactions involved persons who use wheelchairs or scooters. This is an unreasonable assumption. As a matter of common sense, the class in this case is large.[9]

In addition, the class is geographically dispersed, stretching from San Diego to Napa, and the class members are difficult to identify. For these reasons, the Court finds that joinder of all class members is impracticable and that the class satisfies Rule 23(a)(1).

#### 2. Commonality

■ Rule 23(a)(2) requires that there be questions of law or fact that are common to the class. The Ninth Circuit has held that the commonality requirement is "construed permissively," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998), that "[a]ll questions of fact and law need not be common to satisfy the rule," *id.*, and that the requirements for finding commonality under Rule 23(a)(2) are "minimal." *Id.* at 1020.

7. But it has been suggested that a class exceeding one hundred members would satisfy the numerosity requirement. *See Berlowitz v. Nob Hill Masonic Management, Inc.*, 1996 WL 724776 at *3, 1996 U.S. Dist. LEXIS 22599 at *7 (N.D.Cal. 1996).

8. Defendant argues that census data is insufficient to establish numerosity. In fact, however, "[c]ensus data [is] frequently relied on by courts in determining the size of proposed classes." 1 Newberg § 3:3; *Colorado Cross–Disability Coalition v. Taco Bell Corp.*, 184 F.R.D. 354, 358 (D.Colo.1999); *Jorgensen v. Jack in the Box Restaurants*, No. C95–0406 SAW (N.D.Cal.1997)

(Mot., Ex. 7); *Berlowitz*, 1996 WL 724776 at *3, 1996 U.S. Dist. LEXIS 22599 at *7–8; *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D.Cal.1994).

9. Defendant contends that Plaintiff's failure to specifically identify a large number of individual class members proves that there is no numerosity. The Court infers the opposite conclusion. *See Leiken v. Squaw Valley Ski Corp.*, 1994 WL 494298, 1994 U.S. Dist. LEXIS 21281 at *13 (E.D.Cal.1994) ("The difficulties of identifying additional class members at this stage in the litigation *support* certification, rather than undercut[ ] it.") (emphasis added).

A number of courts have held that where people who use wheelchairs encounter the same types of barriers at a number of commonly-owned or affiliated public accommodations, commonality is established and class certification is appropriate. *See, e.g., Colorado Cross–Disability Coalition,* 184 F.R.D. at 359–60; *Ambulatory Surgery,* 197 F.R.D. at 526; *Arnold,* 158 F.R.D. at 449.

*Arnold* most closely parallels this case. There, a class of mobility-impaired persons alleged claims involving all California United Artists theaters[10] under the ADA's readily achievable standard (built and last remodeled prior to January 26, 1993) seeking modifications to create more wheelchair seating spaces, remove barriers to accessible paths of travel, and alter restroom facilities where necessary for access. *Arnold,* 158 F.R.D. at 444. In addition, the plaintiffs brought claims under ADA Access Guidelines (constructed or altered after January 26, 1993) seeking compliance with the Act's requirements for the minimal number of wheelchair locations, and accessible routes of egress. *Id.* In addressing the common question of law and fact element of Rule 23(a), Judge Henderson started his analysis by noting that the "requirement that there be questions of law or fact common to the class is 'met by the alleged existence of common discriminatory practices.'" *Id.* (citing *Walthall v. Blue Shield of California,* 16 Fair. Empl. Prac. Cas. (BNA) 626, 628, 1977 WL 34 (N.D.Cal. 1977)). As a corollary to this legal proposition, Judge Henderson appropriately stated that "the actions of the defendant need not affect each member of the class in the same manner.... Nor must all questions of law and fact involved in the dispute be common to all members of the class." *Id.* In holding that the commonality requirement was met, Judge Henderson observed:

> Inadequate wheelchair accommodations at particular theaters are very likely to affect all wheelchair-users in the same way.... Thus the state of such accommodations at defendant's various theaters, and the legal adequacy of those accommodations, are is-

sue of fact and law common to all of those disabled persons affected by them.

*Id.* at 449.

In this case, the proposed class challenges the accessibility of a number of architectural elements, including queue lines, entrances, condiment and drink dispensers, dining areas, restrooms and parking lots. Like *Arnold,* the state of such elements at Defendant's restaurants, and the legal adequacy of such elements, are issues of fact and law common to all class members. Factually, this case involves a homogeneous class of plaintiffs (individual wheelchair or scooter users) who are bringing multiple but common factual claims that will be determined pursuant to a common legal backdrop.

Defendant states that "the 220 company-owned restaurants encompass a multitude of architectural designs, based on approximately 30 different prototypes with different interior layouts and features." Opp. at 7. It quotes Carlos Azalde, former Manager of Restaurant Design, as saying that "each particular prototype ha[s] an infinite number of seating layouts and different types of condiment stations." Azalde Decl. at 85:11–13. The "unique architecture" argument has been rejected by a number of courts in disability cases. As the court in *Arnold* noted:

> [T]he specific design features challenged by plaintiffs are ones, some or all of which, they allege exist or have existed in many if not all of defendant's theaters during the relevant period. From the fact that the same categories of design features are being challenged in each theater, it follows that the legality of those features are legal issues common to the claims of the members of all of the subclasses. In addition, where, as here, plaintiffs challenge conditions at several sites, all owned by a single corporate defendant, the legal standard applied under the ADA to evaluate the adequacy of the accommodations at each of the respective theaters is one that hinges, in part, on various corporation-wide factors such as the availability of resources.

*Arnold,* 158 F.R.D. at 449.[11]

As in *Arnold,* Plaintiffs here are challenging the "same categories" of architectural

---

**10.** There were over seventy such theaters at the time.

**11.** *Access Now, Inc. v. Walt Disney World Co.,* 211 F.R.D. 452 (M.D.Fla.2001), cited by Defen-

barriers at Defendant's restaurants, namely, those pertaining to queue lines, entrances, condiment and drink dispensers, dining rooms, bathrooms and parking lots.[12]

Defendant's emphasis on the differences in its restaurants, in any event, overlooks the similarities. For example, all newly-constructed Taco Bell restaurants are built in accordance with prototypes designed by Taco Bell's Architecture and Engineering (A & E) department located at Taco Bell's corporate headquarters, and all large-scale retrofit projects are based on designs in "project books" prepared by the A & E department. Azalde Dep. at 18:14–20; 20:11–14; 30:11–18. Taco Bell then convenes meetings with its construction managers and facilities managers— all of whom are employed by Taco Bell or its parent company—to familiarize them with the prototypes or project designs, who then oversee the construction projects to make sure that they are done in compliance with the designs. *Id.* at 26:13–27:2; 27:24–28:16; 31:19–24. Local contractors do not have the discretion to make any material modifications to these designs. *Id.* at 27:11–23.[13]

This centralized decision-making is an additional factor weighing heavily towards a finding of commonality, if it does not establish commonality outright. *See Faulk v. Home Oil Co.*, 184 F.R.D. 645, 655 (M.D.Ala. 1999) ("the locus of decisionmaking authority is an important consideration when determining whether class certification is appropriate for systemic discrimination claims involving multiple facilities"); *Buchanan v. Consolidated Stores Corp.*, 217 F.R.D. 178, 188 (D.Md.2003) ("The evidence of centralized decisionmaking is, therefore, sufficient for the court to conclude that Plaintiffs have fulfilled the commonality requirement.").

Defendant also contends that the "readily achievable" standard under the ADA will require store-specific evaluations. Opp. at 9–10. However, even where a "readily achievable" analysis is necessary (*i.e.*, for restaurants built prior to January 1993 which have not undergone substantial renovation), the readily achievable issue "hinges, in part, on various corporation-wide factors such as the availability of resources" and thus presents a question common to the class. *Arnold,* 158 F.R.D. at 449.

Finally, the class members seek only the minimum statutory damages per violation of the Unruh Act and the CDPA, to which they are entitled without proof of actual damages. *Botosan v. Paul McNally Realty,* 216 F.3d 827, 835 (9th Cir.2000). Thus the only damages issue not common to the class is the simple question of the number of instances that individual class members were aggrieved by inadequate accommodations at Defendant's restaurants during the period covered by the lawsuit. *Arnold,* 158 F.R.D. at 449.

For the above reasons, Plaintiffs have established the requirement of commonality under Rule 23(a)(2).[14]

---

dant, is distinguishable most notably because there the plaintiffs provided only "conclusory allegations" that the defendant's policies violated the ADA. *Id.* at 454–55. In this case, Plaintiffs have specifically identified the alleged deficiencies in Defendant's policies.

**12.** The Court notes that, if necessary, subclasses can be created in this case to account for variations in the prototypes used.

**13.** Defendant highlights the architectural discretion permitted local consultants and contractors without clarifying that this pertains only to smaller-scale remodel jobs. *See* Opp. at 7.

**14.** Defendant contends that store-specific determinations will be necessary because the CDPA allegedly permits deviations from its provisions if they are necessary to comply with other existing laws. Opp. at 10. Plaintiffs note that this is an apparent reference to Cal. Civ.Code § 54.1(a)(1), but that this section has never been interpreted to allow a public accommodation to deviate from the California Standards. Reply at 9. However, even if Defendant could cite to a specific statute or regulation that would prevent it from complying with the Standards—which it has not done— the interplay between § 54.1(a)(1) and such statutes or regulations would present issues common to the class.

Defendant also argues that more store-specific issues are created by the existence of California Code of Regulations Title 24 § 101.17.11(4), which provides that certain accessibility barriers are permissible when complying with the regulations or providing equivalent facilitation would create an unreasonable hardship. Opp. at 10. Plaintiffs respond by noting that Defendant would have had to apply to the relevant enforcing agency for such an exception at the time of construction and that Defendant has not presented any evidence, either in opposing Plaintiffs'

### 3. Typicality

Rule 23(a)(3) requires that the claims of the named plaintiffs be typical of those of the class. The Ninth Circuit does "not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). "In a public accommodations suit . . . where disabled persons challenge the legal permissibility of architectural design features, the interests, injuries, and claims of the class members are, in truth, identical such that any class member could satisfy the typicality requirement for class representation." *Arnold*, 158 F.R.D. at 450.

The named plaintiffs here, like members of the proposed class, all use wheelchairs or scooters for mobility and have encountered allegedly discriminatory barriers and policies at Defendant's restaurants. The effect of these alleged barriers and policies is the same for the named plaintiffs as for the class. The named plaintiffs challenge these barriers under the same statutes and remedial theories as the class. Therefore, their claims satisfy the typicality requirement of Rule 23(a)(3).[15]

### 4. Adequacy of Representation

Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class. Resolution of two questions determines whether this requirement is met: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir.2003).[16]

Defendant contends that Plaintiffs have not met the adequacy requirement because the named plaintiffs lack a thorough understanding of the case. Opp. at 15–18. Defendant points to the depositions of each of the named plaintiffs and cites language demonstrating that the named plaintiffs do not know how the various legal standards at issue in this case relate to the barriers allegedly confronted. Plaintiffs respond that the named plaintiffs' knowledge of the case is sufficient. Reply at 12–14 (citing, *e.g., Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) (reversing dismissal of derivative action even though plaintiff had little knowledge of the nature of the suit or the underlying facts)).

The threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim. *Burkhalter Travel Agency v. MacFarms International, Inc.*, 141 F.R.D. 144, 153–54 (N.D.Cal.1991), and will be deemed inadequate only if she is "startlingly unfamiliar" with the case. *Greenspan v. Brassler*, 78 F.R.D. 130, 133–34 (S.D.N.Y. 1978). It is not necessary that a representative "be intimately familiar with every factual and legal issue in the case;" rather, it is enough that the representative understand the gravamen of the claim. *In re Worlds of Wonder Securities Litigation*, 1990 WL 61951 at *3, 1990 U.S. Dist. LEXIS 8511 at *12 (N.D.Cal.1990). Those courts that have found representatives inadequate have done so because the plaintiffs knew nothing about the case and completely relied on counsel to direct the litigation. *See Welling v. Alexy*, 155 F.R.D. 654, 659 (N.D.Cal.1994) (finding that plaintiff was inadequate because he showed a "complete lack of interest in the conduct of the case"); *Koenig v. Benson*, 117 F.R.D. 330, 337 (E.D.N.Y.1987) (finding plaintiff inadequate because of "alarming unfamiliarity" with lawsuit). While the named

---

motion for class certification or in discovery, that it has done so. Reply at 9–10. The Court notes that, in any event, the interpretation and application of § 101.17.11(4) would present issues common to the class.

**15.** Defendant's argument that the named plaintiffs have not met the typicality requirement is based on its argument that the named plaintiffs

have not met the commonality requirement. Opp. at 14. Because, as explained above, the named plaintiffs have established commonality, Defendant's typicality argument also fails.

**16.** Defendant does not dispute Plaintiff's counsel's adequacy as class counsel.

plaintiffs here may not be able to recite the DOJ and California Standards governing the layout of parking lots or the permissible resistance at the front door of a public accommodation, it is clear from the declarations and deposition excerpts submitted in this case that the named plaintiffs are sufficiently familiar with their claims to adequately represent the members of the proposed class. Requiring more risks undermining the class vehicle. As one court aptly stated:

> The class action procedure exists, in part, for the benefit of plaintiffs with small claims who could not otherwise vindicate their rights. Adoption of defendant's position would convert the class action into a device usable only by individuals with such a degree of sophistication that they would be capable of acting as their own attorneys.

*Kaplan,* 131 F.R.D. at 118.

Defendant also raises the notion that the named plaintiffs must have adequate resources to pay the costs associated with the case so that they may check the "unfettered discretion of counsel." Opp. at 18. The 9th Circuit has not weighed in on whether the financial status of the named plaintiff is relevant to class certification. The Court very much doubts, however, that it would consider it to be. *See In re West Coast Department Stores Antitrust Litigation,* 1979 WL 1721 *1–2, 1979 U.S. Dist. LEXIS 8500 *1–3 (N.D.Cal.1979) (holding that courts should not take into account named plaintiffs' financial status in class certification context and noting that weight of authority is to this effect). Plaintiff's counsel has indicated that he is advancing litigation costs. Reply at 13. The Court agrees that "to deny a class whenever plaintiff's counsel advances significant funds to plaintiffs of little or modest means would be to defeat the very purposes which class actions were designed to achieve." *Bartelson v. Dean Witter & Co.,* 86 F.R.D. 657, 675 (E.D.Pa.1980); *Kaplan,* 131 F.R.D. at 125 (where there is an agreement that named plaintiffs' counsel will advance the

costs of the litigation, "it is not relevant whether plaintiffs themselves . . . ha[ve] sufficient resources to fund the litigation").

The proposed class satisfies the adequate representation requirement of Rule 23(a)(4).

## B. Rule 23(b)

■ The next determination is whether this case fits within one of the three subsections of Rule 23(b). Plaintiffs seek certification under subsection (b)(2). A class is proper under Rule 23(b)(2) if the party opposing the class "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ."

Plaintiffs allege that numerous architectural barriers exist at Defendant's restaurants, that these barriers result from Defendant's discriminatory policies concerning the design and accessibility of its restaurants, and that these barriers deny a large number of people the full and equal enjoyment of the restaurants. These allegations necessarily involve acts that are generally applicable to the class. *Arnold,* 158 F.R.D. at 452 (where class members challenged defendant's failure to change certain architectural features found at its theaters, and the challenged design features affected all class members in the same way, such a scenario "is a paradigm of the type of action for which the (b)(2) form was created"); *Civic Association of Deaf v. Giuliani,* 915 F.Supp. 622, 634 (S.D.N.Y. 1996) ("Because the proposed removal of the street alarm boxes will . . . require injunctive relief applicable to the class as a whole, Rule 23(b)(2) also applies to the class").

Nor does the fact that the class seeks monetary damages in addition to injunctive relief change this result. As long as Plaintiffs' damages claims do not "predominate" over their claims for injunctive relief, certification under Rule 23(b)(2) is permissible. *Molski v. Gleich,* 318 F.3d 937, 950–51 (9th Cir.2003).[17] *Molski* held that there is no

---

**17.** Defendant claims that in footnotes 15 and 16 of the *Molski* decision, the Ninth Circuit adopted the position that the (b)(2) analysis is the "functional equivalent" of the (b)(3) analysis. Opp. at

**20.** Defendant then argues that Plaintiff cannot satisfy the (b)(3) requirements. *Id. Molski* stands for no such proposition. Footnote 15 of that case simply discusses a method of determining

bright-line rule for determining predominance. *Id.* at 951. Rather, courts should look at the facts and circumstances of each case in an effort to determine the plaintiffs' intent in bringing the suit. *Id.* Thus, for example, in *Kanter v. Warner–Lambert,* 265 F.3d 853, 860 (9th Cir.2001), the court found that an award of monetary damages was the "essential goal" in the litigation. And, in *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1240 (9th Cir.1998), the court compared the dollar value of the injunctive and monetary relief. As for the balancing test, it is difficult to perform such a test in a case like this one, when on one side of the scale sits the value of eliminating discriminatory barriers. *Arnold,* 158 F.R.D. at 451 (deeming such a balancing act "an almost impossible exercise as the importance of eradicating discriminatory practices ... through injunctive relief is virtually immeasurable.").

Neither does it appear that Plaintiffs' "essential goal" in this case is an award of monetary damages. Plaintiffs are seeking an injunction requiring Taco Bell to build its new restaurants in compliance with the DOJ and California Standards and to retrofit its existing restaurants so that they comply with these Standards. They are seeking only the statutory minimum of damages under the Unruh Act and the CDPA.[18] The Court cannot say that Plaintiffs' claims for monetary damages predominate over its claims for injunctive relief.

This result is consistent with the purpose of Rule 23(b)(2).[19] "[S]ubdivision (b)(2) was added to Rule 23 in 1966 primarily to facilitate the bringing of class actions in the civil rights area," in large part because "the class suit is a uniquely appropriate procedure in civil rights cases, which generally involve an allegation of discrimination against a group as well as the violation of rights of particular individuals." 7A Charles Alan Wright, Ar-

thur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §§ 1775–76 (2d Ed.1986). Indeed, the Supreme Court has found that "[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of Rule 23(b)(2) classes. *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting Adv. Comm. Notes, 28 U.S.C.App., p. 697). As the court in *Arnold* put it,

> [I]n this case the class members, rather than challenging individual actions taken by the defendant against each of them separately, all challenge the same actions: defendant's failure to change certain architectural features found at its various theaters. The challenged design features affect all class members in almost precisely the same way because of common distinguishing characteristics shared by all of the class members: their status as wheelchair-using or semi-ambulatory disabled persons.... In view of this high degree of homogeneity, it is clear that this suit is a paradigm of the type of action for which the (b)(2) form was created.

*Arnold,* 158 F.R.D. at 452.

Plaintiffs satisfy the Rule 23(b)(2) requirement.

## CONCLUSION

Plaintiffs having satisfied all the requirements under Rule 23, the Court **GRANTS** their motion for class certification. The following class is certified:

> All individuals with disabilities who use wheelchairs or electric scooters for mobility who, at any time on or after December 17, 2001, were denied, or are currently being denied, on the basis of disability, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

---

whether Rule 23(b)(2)'s requirement that injunctive relief predominate over monetary relief is satisfied. Footnote 16 discusses due process concerns raised when a class settlement waives class members' claims to treble damages.

**18.** As noted earlier, the ADA does not provide a damages remedy.

**19.** It is also consistent with the holding of a number of courts which have certified under Rule 23(b)(2) classes of persons with disabilities seeking injunctive and monetary relief for alleged violations of the ADA, the Unruh Act and the CDPA. *See, e.g., Arnold,* 158 F.R.D. at 461–62; *Berlowitz,* 1996 WL 724776 at *1, *2, 1996 U.S. Dist. LEXIS 22599 at *1, 5; *Leiken,* 1994 WL 494298, 1994 U.S. Dist. LEXIS 21281 at *15–16.

accommodations of California Taco Bell corporate restaurants.[20]

**IT IS SO ORDERED.**

---

20. Counsel for Defendant indicated at the hearing on this matter that Defendant had no objection to the time period provided in the proposed class.