Mara AMONE, Individually, and on Behalf of All Persons Similarly Situated, Plaintiffs,

v.

Stephanie AVEIRO, in Her Official Capacity as the Executive Director of the Housing and Community Development Corporation of Hawaii, et al., Defendants.

Civ. No. 04–00508 ACK/BMK.

United States District Court, D. Hawai'i.

March 2, 2005.

---

1. This remedy is least favored given the availability of FED R.CIV.P. 30(c).

Paul Alston, Alston Hunt Floyd & Ing, Honolulu, HI, Shelby Anne Floyd, Alston Hunt Floyd & Ing, Kamuela, HI, Gavin K. Thornton, Lawyers for Equal Justice, Honolulu, HI, Susan K. Dorsey, Kailua, HI, for plaintiff.

John C. Wong, Margaret A. Leong, Office of the Attorney General—State of Hawaii, Honolulu, HI, for defendants.

### ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

### BACKGROUND

KAY, District Judge.

#### I. *Factual History*

The United States Housing Act requires that shelter costs for tenants residing in federally subsidized public housing projects not exceed 30% of a tenant's income. 42 U.S.C. § 1437a(1) (2004). Where tenants are directly responsible for the payment of utility service, the supporting federal regulations require public housing authorities ("PHAs") who operate public housing programs to provide tenants with an allowance for the reasonable utilities consumed by an energy-conservative household of modest circumstance. 24 C.F.R. § 965.501 et seq. (2005). Plaintiffs allege that when utility allowances are calculated properly, the shelter costs for tenants who consume a reasonable amount of utilities do not exceed 30% of their income. (Complaint at 1).

Section 504 of the Rehabilitation Act (29 U.S.C. § 794(a) (2004)) and its supporting regulations prohibit any program or activity receiving federal financial assistance from discriminating against an otherwise qualified individual with a disability by denying the benefits of the program or activity, solely by reason of his or her disability. To ensure that disabled tenants are not deprived of the benefits that they are entitled to under the United States Housing Act, the United States Department of Housing and Urban

Development has promulgated regulations requiring PHAs to establish criteria and procedures for granting relief to "elderly, ill, or disabled residents" whose special needs require them to consume utilities in excess of the amounts provided for in the standard utility allowance. 24 C.F.R. § 965.508 (2005). PHAs are required to notify all tenants of the right to receive such relief and the criteria and procedures that will be used to determine whether the tenants are eligible for adjustments. 24 C.F.R. § 965.508.

Plaintiff Mara Amone ("Plaintiff") is a disabled individual who resides in public housing. As a result of her disability, she uses an oxygen machine for breathing at night, a nebulizer, and an air conditioner. (P.'s Mot. for Class Certification at 6). Plaintiff's monthly income is $572 and her monthly rent is $124, but her actual utility bill is as much as $174 monthly. (P.'s Mot. for Class Certification at 6; Complaint at 10). From the time that Plaintiff moved into the apartment where she currently resides until recently, the utility allowance that she received was $41. (P.'s Mot. for Class Certification at 6-7). Plaintiff alleges that because of the gross insufficiency in the utility allowance that she has been receiving, she has been paying approximately one-half of her income for rent rather than one-third. (P.'s Mot. for Class Certification at 7).

On August 18, 2004, Plaintiff filed her Complaint against Defendants Stephanie Aveiro, in her official capacity as the Director of the Housing and Community Development Corporation of Hawaii ("HCDCH"), and HCDCH. HCDCH is a PHA in Hawaii, which receives federal funds to administer public housing programs across the state. Plaintiff alleges that Defendants failed to comply with the requirements of the United States Housing Act § 1437a(1) and the United States Department of Housing and Urban Development's ("HUD") supporting regulation (24 C.F.R. § 965.508) by (1) failing to provide notice to tenants of public housing informing them that if they were disabled and required increased utility usage as a result of their disability, they may be entitled to an increase in their utilities allowance; and (2) failing to establish and implement rules and procedures to determine what the increased allowance would be.

As a result, Plaintiff alleges that Defendants violated her rights under Section 504 of the Rehabilitation Act (29 U.S.C. § 794(a)), the Americans with Disabilities Act (42 U.S.C. § 12102), the Fair Housing Act (42 U.S.C. § 3604(f)(2)), and 42 U.S.C. § 1983 by failing to provide her with the benefits afforded to non-disabled residents, namely shelter costs that do not exceed 30% of her income. Plaintiff alleges that she is representative of a class of present and past disabled federal public housing residents, similarly situated, and prays for certification of a class under Federal Rule of Civil Procedure 23.[1] Plaintiff seeks declaratory and injunctive relief directing Defendants to comply with the United States Housing Act, Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, the Fair Housing Act, 24 C.F.R. Part 8, and 24 C.F.R. § 965.508 by: (1) promulgating criteria and procedures for adjusting utility allowances for disabled residents with special needs in accordance with the United States Housing Act; (2) notifying public housing residents of the availability of such adjustments; and (3) providing such adjustments where required under governing law. Plaintiff's Motion for Class Certification indicated that she also

1. In her Motion for Class Certification, Plaintiff defines the proposed class as "disabled persons that currently reside, or have resided within the last two years, in an HCDCH public housing project in which residents receive utility allowances, whose special needs arising from their disability require them to consume utilities in excess of the amount provided for in the standard public housing utility allowances." (P.'s Mot. for Class Certification at 2). However, Plaintiff's Reply in Support of Motion for Class Certification defines the class as including "disabled persons that currently reside, or have re-

sided within the last *six years*, in an HCDC public housing project ...." (P.'s Reply in Support of Mot. for Class Certification at 1) (emphasis added). At the February 28, 2005 hearing, Plaintiff's counsel stated that Plaintiff is seeking certification of the class as defined in her Motion for Class Certification (current residents and residents within the last two years) and that her Reply erroneously defined the class as including residents from the past six years. Furthermore, Hawaii Revised Statutes section 661-5 provides a two year statute of limitations for claims against the state.

sought to establish the right to compensatory damages for the alleged violation of her rights. (P.'s Mot. for Class Certification at 7). However, at the February 28, 2005 hearing, Plaintiff's counsel represented that Plaintiff is not asking the Court to certify a class as to damages, rather the proposed class seeks to establish an entitlement to "adjustments." Class members who currently reside in HCDCH public housing will seek to establish the right to receive an adjustment in their prospective rent while the class members who are no longer residing in public housing will simply request a ruling as to whether they were/are entitled to an adjustment. The past residents will then be required to file their own individual suits to recover any amounts to which they are entitled.

Defendants allege that a review of Plaintiff's tenant file by HCDCH staff revealed no documentation of her need for a medical device in her housing unit because of her disability, the use of which might have entitled her to a supplemental allowance. (Defs.' Mem. in Opp. to Mot. for Class Certification at 5). Defendants further allege that under HCDCH procedures, disabled residents who require medical equipment in their housing unit due to their disability may be eligible for a supplemental utility allowance if their use of the equipment results in excess consumption of electricity. (Defs.' Mem. in Opp. to Mot. for Class Certification at 5). Defendants claim that after Plaintiff filed her suit, HCDCH reviewed its records of disabled public housing residents in relation to 24 C.F.R. § 965.508. (Defs.' Mem. in Opp. to Mot. for Class Certification at 6). Based on its review, HCDCH claims that it presently has a listing of 1,388 residents identified in its records as disabled. (Defs.' Mem. in Opp. to Mot. for Class Certification at 6). However, Defendants further claim that not all of the listed disabled residents requested reasonable accommodation for their disability or supplemental accommodation for excess consumption of electricity. (Defs.' Mem. in Opp. to Mot. for Class Certification at 6). Defendants allege that the records indicate that approximately only 300 of the listed disabled residents requested some form of accommodation and of that number approximately 30 residents are utilizing an air conditioner for their disability in their housing unit, which may entitle them to a supplemental utility allowance. (Defs.' Mem. in Opp. to Mot. for Class Certification at 6).

Defendants state that HCDCH has, in connection with Plaintiff's suit, contracted with NFC, Inc. ("NFC") as a consultant to establish the utility usage and corresponding impact on the residents' utility allowance for various pieces of medical equipment. (Defs.' Mem. in Opp. to Mot. for Class Certification at 6). Defendants indicate that NFC's data revealed that the piece of medical equipment that results in the most additional electrical usage, is an air conditioner when operated "24–7." (Defs.' Mem. in Opp. to Mot. for Class Certification at 6). On September 7, 2004, HCDCH provided a listing of its disabled residents to Plaintiff's attorney. (Defs.' Mem. in Opp. to Mot. for Class Certification at 7). In addition, Defendants prepared a modified notice for individual relief pursuant to 24 C.F.R. § 965.508. (Defs.' Mem. in Opp. to Mot. for Class Certification at 7). The notice was reviewed by Plaintiff's attorney and was included by Defendants in the December 4, 2004 rent notice to all public housing residents. (Defs.' Mem. in Opp. to Mot. for Class Certification at 7). Defendants claim that only one resident has applied, in response to the December 4, 2004 notice, for the supplemental utility allowance.[2]

## II. *Procedural History*

On August 18, 2004, Plaintiff filed her Complaint.[3]

---

[2] The Court notes that at the February 28, 2005 hearing, counsel for Defendants conceded that as of the August 18, 2004 filing of the Complaint Defendants were not in compliance with the statutes and regulations at issue in this matter.

[3] At the February 28, 2005 hearing, counsel disclosed for the first time that there is an additional related action pending in this Court before Chief Judge David Alan Ezra as well as an additional related action in the Circuit Court of the Third Judicial Circuit of the State of Hawaii. Counsel also represented that the actions pending before Judge Ezra and in the Third Judicial Circuit are based on a larger class action of

On November 4, 2004, Plaintiff filed a Scheduling Conference Statement.

On November 8, 2004, Defendants filed a Scheduling Conference Statement.

On November 29, 2004, Defendants filed an Answer to Plaintiff's Complaint.

On December 14, 2004, a settlement conference was held but settlement was not reached.

On January 3, 2005, Plaintiff filed her Motion for Class Certification.

On January 7, 2005, Defendants filed an Opposition to Plaintiff's Motion for Class Certification.

On February 14, 2005, Plaintiff filed her Reply to Defendants' Opposition to Plaintiff's Motion for Class Certification.

On February 28, 2005, the Court heard Plaintiff's Motion for Class Certification.

### *STANDARD*

A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen'l Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The burden of establishing these prerequisites falls on the party seeking certification. *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir.2001); *see also* 7A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1759 (1986) (citing numerous cases).

Plaintiff must demonstrate that the instant case (1) conforms to the four requirements of Rule 23(a) and (2) fits into one of the three categories under Rule 23(b).

The four requirements of Rule 23(a) are:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and ade-

quately protect the interests of the class. Fed.R.Civ.P. 23(a) (West 2004).

Next, the case must fall under one of the three categories of Rule 23(b):

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b) (West 2004).

Analysis of whether the above-stated requirements are met should not involve inquiry into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). What is required of the Court is to analyze the allegations of the complaint and other material (material sufficient to form a reasonable judgment on each requirement), consider the nature and range of proof necessary to establish those allegations, determine as best able the future course of the litigation and then determine if the requirements are met at the time. *See Blackie v. Barrack*, 524 F.2d 891, 900–01 (9th Cir.1975).

which the proposed class in this action is a part and that the action in the Third Judicial Circuit is seeking to recover damages. The proposed class in this action is distinguished from the

larger class because of the separate causes of action resulting from the class members' status as disabled persons.

## *DISCUSSION*

### I. Rule 23(a) Prerequisites

Federal Rule of Civil Procedure 23(a)(1)-(4) sets forth four prerequisites to a class action that are commonly referred to as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998) (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

### A) Numerosity

■ To satisfy the numerosity requirement under Federal Rule of Civil Procedure 23(a)(1) the potential class "must be so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Telephone Co. v. E.E.O.C.,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Furthermore, " 'impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.' " *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913–14 (9th Cir. 1964) (internal citations omitted). Thus, impracticability of joinder can be demonstrated without reference to class size, for example in cases where class members are difficult to locate or are unknown. *See Jordan v. County of Los Angeles,* 669 F.2d 1311, 1319–20 (9th Cir.1982), *vacated on other grounds,* 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982) (citations omitted) (presence of other indicia of impracticability, such as joinder of unknown individuals, obviates need to ascertain class size); *Harris,* 329 F.2d at 913 (holding that difficulty in identifying and locating affected persons is relevant in determining whether joinder is impracticable); *see also* NEWBERG AND CONTE, 1 NEWBERG ON CLASS ACTIONS § 3.6 (4th ed.2002) (stating that "factors relevant to the joinder impracticability issue include judicial economy arising from avoidance of a multiplicity of actions, geographic dispersement of class members, size of individual claims, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members.").

■ Plaintiff claims that the number of class members currently residing in public housing is unknown and that the additional number of class members who are no longer residing in public housing but who would have been entitled to reduced rents when they did is difficult to determine at this time. (P.'s Mot. for Class Certification at 4). Although Defendants have begun to review their records; Plaintiff claims that Defendants do not address the number, location, or identity of those persons who were public housing tenants prior to the filing of the Complaint. (P.'s Mot. for Class Certification at 4). Plaintiff further emphasizes that the Complaint alleges that HCDCH had no notice and procedure whereby tenants would be informed of their rights. (P.'s Mot. for Class Certification at 4).

Defendants claim that the number of public housing residents presently listed in HCDCH's records as disabled is approximately 1,388 and of those approximately 300 have already requested a reasonable accommodation due to their disability. (Defs.' Mem. in Opp. to Mot. for Class Certification at 12). The Defendants further claim that of the 300 disabled residents who have requested an accommodation only 30 presently require an air conditioner in their housing unit for their disability. (Defs.' Mem. in Opp. to Mot. for Class Certification at 12). Defendants assert that they received only one application for a supplemental utility allowance in response to the December 4, 2004 modified notice that was mailed to all public housing residents. (Defs.' Mem. in Opp. to Mot. for Class Certification at 12). Defendants further allege that HCDCH is presently reviewing the records of residents who vacated public housing within the past two years[4] in order to identify residents who were listed as being disabled and whether they may have

---

4. Hawaii Revised Statutes section 661–5 provides a two year statute of limitations for claims against the state. The parties agree that the class should include current residents as well as residents form the past two years.

been eligible for a supplemental utility allowance. (Defs.' Mem. in Opp. to Mot. for Class Certification at 13). Finally, Defendants estimate that "the total number of disabled public housing residents, past and present, who might be entitled to avail themselves of the benefit of the regulation is, at best, less than 100 and perhaps even less than 60." (Defs.' Mem. in Opp. to Mot. for Class Certification at 13–14).

Here the proposed class meets Rule 23(a)(1)'s numerosity requirement by virtue of both the number of potential class members and additional factors that make joinder impracticable. The United States Supreme Court has held that a class of 15 members would be too small to meet the numerosity requirement. *General Telephone Co. v. E.E.O.C.*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). However, "[i]n light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone." NEWBERG AND CONTE, 1 NEWBERG ON CLASS ACTIONS § 3.6 (4th ed.2002). Here defendants concede that at least thirty current residents would qualify as class members based on their requests for accommodations requiring an air conditioner. This does not, however, include those residents that may be eligible for utility allowances based on other medical equipment, those residents who have not requested an accommodation, nor past residents who are no longer residing in public housing. Thus, the potential class is likely to exceed 40 members. Indeed, Defendants estimate that "the total number of disabled public housing residents, past and present, who might be entitled to avail themselves of the benefit of the regulation is, at best, less than 100 and perhaps even less than 60." (Defs.' Mem. in Opp. to Mot. for Class Certification at 13–14). The Court finds that the putative class is of sufficient size to satisfy the numerosity requirement.

In addition to the size of the class, the Court notes that additional factors are present that would make joinder impracticable. The proposed class is comprised of individuals whose financial circumstances may prevent them from pursuing individual litigation, who are unlikely to know that a cause of action exists, and whose individual claims are likely to be too small to make individual litigation feasible. Because joinder of all members of the proposed class would be impracticable, the Court finds that the numerosity requirement is met.

## B) Commonality

■ To satisfy the "commonality" requirement of Federal Rule of Civil Procedure 23(a)(2) Plaintiffs must establish the existence of questions of law and fact common to the class. Rule 23(a)(2) is construed permissively, and "all questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. "Commonality" is established by "the existence of shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class." *Id.* This Court has recognized that class suits for declaratory or injunctive relief, "by their very nature often present common questions satisfying Rule 23(a)(2)." *Daly v. Harris*, 209 F.R.D. 180, 186 (D.Haw.2002) (quoting WRIGHT, MILLER & KANE, 7A FEDERAL PRACTICE AND PROCEDURE § 1763 (1986)).

■ The United States Court of Appeals for the Ninth Circuit has held that "in a civil rights suit, that commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir.2001) (citations omitted). Here Plaintiff asserts that the gravamen of her suit is that Defendants HCDCH had an obligation to notify disabled public housing tenants of their right to request reduced rents (higher utility allowances) because of their need to spend higher than normal amounts on electricity to operate medical equipment prescribed by a physician, and to have a process for determining what kind of increased allowance they would receive. (P.'s Mot. for Class Certification at 5). Plaintiff alleges that Defendants collected information annually on the presence of disabled tenants but did not notify the dis-

abled tenants of their rights. (P.'s Mot. for Class Certification at 5). As a result, Plaintiff further alleges that disabled tenants needing electrically operated medical equipment paid a higher rent than similarly-situated non-disabled tenants. (P.'s Mot. for Class Certification at 5). Plaintiff concludes that every member of the putative class has exactly the same claim based on the federal regulations and the method of Defendants' discrimination is common to all prospective class members. (P.'s Mot. for Class Certification at 5). Defendants failed to address whether the proposed class meets the commonality requirement. However, even if Defendants were to argue that variation in the nature of the particular class members' disabilities preclude a finding of commonality, "the differences that exist here do not justify requiring groups of persons with different disabilities, all of whom suffer similar harm ... to prosecute separate actions." *Armstrong*, 275 F.3d at 868. The Court finds that the commonality requirement is met.

### C) Typicality

■ Federal Rule of Civil Procedure 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims and defenses of the class. The requirement serves "to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts*, 976 F.2d 497, 508 (9th Cir.1992). The United States Court of Appeals for the Ninth Circuit interprets the typicality requirement permissively and requires only that the named plaintiffs' injuries be similar and not identical to those of the other class members. *Armstrong*, 275 F.3d at 868 (citing *Hanon*, 976 F.2d at 508). However, where the claims of the named representative would be subject to unique defenses which could become the focus of the litigation because of facts peculiar to that particular plaintiff, typicality is lacking. *See Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996) (typicality requirement not met where class representatives allege different injuries from those suffered by other class members).

Here Plaintiff asserts that her claims are in no way antagonistic to the interests of the other proposed class members and that if she prevails, the interests of the class members in eliminating discriminatory rents in public housing will be furthered. (P.'s Mot. for Class Certification at 6). Defendants claim, however, that Plaintiff's case is not typical of other class members because her resident file does not record a medical reason or request for a medical device that might entitle her to a supplemental allowance. (Defs.' Mem. in Opp. to Mot. for Class Certification at 16). Defendants further contend that questions of fact peculiar to each disabled resident prevent Plaintiff from establishing the typicality of her claim including whether proper notice of the regulation was provided to them, whether their need for a specific medical device has been documented, and whether the resident is consuming excess electricity. (Defs.' Mem. in Opp. to Mot. for Class Certification at 16). However, at the February 28, 2005 hearing, counsel for Defendants conceded that as of the August 18, 2004 filing of the Complaint Defendants were not in compliance with the statutes and regulations at issue in this matter.

The questions of fact specific to each member of the putative class are insufficient to defeat Plaintiff's ability to establish the typicality of her claim. "Where the challenged conduct is a policy or practice that affects all class members, the underlying issue presented with respect to typicality is similar to that presented with respect to commonality ...." *Armstrong*, 275 F.3d at 868. In such a case, because the cause of the injury is the same, the typicality inquiry involves comparing the injury asserted in the claims raised by the named plaintiff with those of the rest of the class. *Id.* In *Armstrong*, a group of disabled prisoners and parolees brought a class action against several state officials alleging that the policies and practices for parole and parole revocation proceedings violated the Americans with Disabilities Act and the Rehabilitation Act. The defendant officials argued that the wide variation in the nature of the particular class members' disabilities precluded a finding of commonality or typicality. *Id.* at 868–69. The United States Court of Appeals for the Ninth Circuit rejected the

defendants' argument and explained that "[w]e do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong*, 275 F.3d at 868 (citing *Hanon*, 976 F.2d at 508). Here, as in *Armstrong*, despite differences in the members' disabilities, the injuries allegedly suffered as the result of defendants' conduct are identical. Counsel for Defendants have conceded that as of the August 18, 2004 filing of the Complaint Defendants were not in compliance with the statutes and regulations at issue in this matter. Thus, each member of the proposed class will have paid a higher rent than similarly-situated non-disabled tenants based on their need for electrically operated medical equipment, every member has the same claim based on the applicable statutes and regulations, and the method of Defendants' discrimination is common to all prospective class members. The Court finds that the typicality requirement is met.

### D) Adequate Representation

■ Finally, Federal Rule of Civil Procedure 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." The requirement serves to protect the due process rights of absent class members who will be bound by the judgment. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998) (internal quotation marks omitted). A determination of legal adequacy is based on two inquiries: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Id.*

■ Here Plaintiff asserts and Defendants concede that the requirement of adequate representation is satisfied. Plaintiff asserts that her interests are co-extensive with the other putative class members because she seeks agency compliance with statutory and constitutional requirements. (P.'s Mot. for Class Certification at 8). Furthermore, Plaintiff states that lead counsel for the putative class has litigated numerous individual and class actions concerning rights guaranteed by Section 504 of the Rehabilitation Act. (P.'s Mot. for Class Certification at 7). Plaintiff's counsel further indicate that they are familiar with the requirements of the Fair Housing Act, have advocated on behalf of many public housing tenants, and will prosecute the class claims vigorously. (P.'s Mot. for Class Certification at 7–8). Because Plaintiff Amone and her counsel have no apparent conflicts of interest with the other putative class members and because it appears that Plaintiff and her counsel will prosecute the action vigorously on behalf of the class, the Court finds that the adequate representation requirement is met.

### II. *Rule 23(b)(2)*

■ Under Federal Rule of Civil Procedure 23(b)(2)[5], class certification is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1195, *amended by*, 273 F.3d 1266 (9th Cir.2001) (citing *Nelsen v. King County*, 895 F.2d 1248, 1254–55 (9th Cir.1990)) (further citations omitted). Although Rule 23(b)(2) certification is inappropriate where the primary relief sought is monetary, *see id.*, a class seeking monetary damages that are merely incidental to the primary claim for injunctive relief can be certified under subsection (b)(2). *Probe v. State Teachers' Retirement System*, 780 F.2d 776, 780 (9th Cir. 1986).

In determining whether the primary relief sought is injunctive or monetary,[6] the United

---

**5.** Plaintiff seeks certification of the proposed class solely under Federal Rule of Civil Procedure 23(b)(2). Thus, the Court has limited its analysis of Rule 23(b) to subsection (2).

**6.** The Court notes that at least one authority

States Court of Appeals for the Ninth Circuit focuses on the language of Rule 23(b)(2) and the intent of the parties. *See Molski v. Gleich*[7], 318 F.3d 937, 950 (9th Cir.2003). The Ninth Circuit also considers the essential goal in the litigation and may compare the value of injunctive and monetary relief. *Id.* Here Plaintiff argues that her request for injunctive relief qualifies the proposed class for certification under Rule 23(b)(2). (P.'s Mot. for Class Certification at 12).

 Plaintiff seeks declaratory and injunctive relief directing Defendants to comply with the United States Housing Act, Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, the Fair Housing Act, 24 C.F.R. Part 8, and 24 C.F.R. § 965.508 by: (1) promulgating criteria and procedures for adjusting utility allowances for disabled residents with special needs in accordance with the United States Housing Act; (2) notifying public housing residents of the availability of such adjustments; and (3) providing such adjustments where required under governing law. Furthermore, at the February 28, 2005 hearing, Plaintiff's counsel clarified that Plaintiff is not asking the Court to certify a class as to damages, rather the proposed class will seek to establish an entitlement to "adjustments." Class members who currently reside in HCDCH public housing will seek to establish the right to receive an adjustment in their prospective rent while the class members who are no longer residing in public housing will simply request a ruling as to whether they were/are entitled to an adjustment. The past residents will then be required to file their own individual suits to recover any amounts to which they are entitled or they may be able to recover such amounts in the Third Circuit action.[8] The Court finds that the primary purpose of Plaintiff's suit is to obtain compliance with the statutes and regulations as described above and that the class is appropriate for certification under Federal Rule of Civil Procedure 23(b)(2).

Finally, Defendants assert that certification of the putative class is not appropriate because Defendants have attempted to resolve this case and are "in the process of reconciling any discrepancy in the entitlement to any disabled resident with regards to the supplemental utility allowance" and that "[c]lass certification will add nothing to the process already taking place." (Defs.' Mem. in Opp. to Mot. for Class Certification at 22). Such a contention does not, however, render the Plaintiff's claims moot. *See* NEWBERG AND CONTE, 1 NEWBURG ON CLASS ACTIONS § 2:14 (4th ed.2002) ("The specific relief sought by a plaintiff may come about by the defendant's voluntary cessation of the challenged conduct, but even when accompa-

---

suggests that "[d]isputes over whether the action is primarily for injunctive or declaratory relief rather than a monetary award neither promote the disposition of the case on the merits nor represent a useful expenditure of energy. Therefore, they should be avoided. If the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2)." 7A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1775 (1986).

7. In *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003), Molski brought an action, against an owner and operator of service stations, on behalf of a class of mobility-impaired individuals alleging denial of access to public accommodations and discrimination. *Id.* at 941. The district court certified the class under Rule 23(b)(2) despite the fact that the plaintiff class agreed to a consent decree that released both actual and treble damages. *Id.* at 949. On appeal, the appellants argued that the district court's certification of the class under Rule 23(b)(2) was erroneous because

monetary damages were the predominant form of relief sought by the class. *Id.* The Ninth Circuit held that monetary damages involved in the case were substantial, but found that injunctive relief was the predominant form of relief sought by the class. *Id.* The court emphasized the fact that the named plaintiff alleged that the defendant acted in a manner generally applicable to the class and also pointed to the fact that claims of physical injury were preserved by the consent decree.

8. The Court notes that under Federal Rule of Civil Procedure 23(c)(4) ("When appropriate ... an action may be brought or maintained as a class action with respect to particular issues....") In *Burns–Vidlak v. Chandler* (Civ. No. 95–00892), this Court certified a class to determine the defendants' liability for compensatory and punitive damages and for determining the proper amount of punitive damages. However, the Court required class members to separately pursue claims for individual compensatory damages.

nied by assurances of future good conduct, this voluntary action will not render the controversy moot unless the defendant meets a heavy burden to show that its change of heart is permanent and that the defendant will not return to its old ways."). In *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), the United States Supreme Court established a stringent standard for mootness. The Court held that a case may be moot if the defendant can demonstrate that "there is no reasonable expectation that the wrong will be repeated." *Id.* (citations omitted). The burden is a heavy one and Defendants here have not established that there is no reasonable expectation that the conduct alleged by Plaintiff will not continue.

### Conclusion

Because the proposed class meets the criteria contained in Federal Rules of Civil Procedure 23(a) and 23(b)(2) and for reasons discussed above, the Court GRANTS Plaintiff's Motion for Class Certification. The Class will be defined as disabled persons that currently reside, or have resided within the last two years, in an HCDCH public housing project in which residents receive utility allowances, whose special needs arising from their disability require them to consume utilities in excess of the amount provided for in the standard public housing utility allowances.

The Court ORDERS that the parties meet and confer within 10 calendar days of the filing of this Order to agree on the proposed notice to potential class members pursuant to Federal Rule of Civil Procedure 23(d)(2). The notice shall be submitted to the Court within 20 calendar days of the filing of this Order and shall include, inter alia, the information set forth in Plaintiff's Proposed Notice to Class attached to her Motion for Class Certification (but excluding reference to compensatory damages).

IT IS SO ORDERED.